No. 24-2355

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

PAYSERVICES BANK,

*Plaintiff-Appellant,*

V.

FEDERAL RESERVE BANK OF SAN FRANCISCO,

*Defendant-Appellee.*

On Appeal from the United States District Court for
the District of Idaho
No. 1:23-cv-00305-REP
Hon. Raymond E. Patricco, Jr.

---

### SUPPLEMENTAL EXCERPTS OF RECORD
Volume 1 of 1

---

Jonathan K. Youngwood
Meredith Karp
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-3539
jyoungwood@stblaw.com
meredith.karp@stblaw.com
*Attorney for Defendant-Appellee.*
Federal Reserve Bank of San Francisco

# INDEX

Defendant-Federal Reserve Bank of San Francisco's Motion to Dismiss
Plaintiff's Complaint...............................................................................3

Plaintiffs-Response to Defendant's Motion to Dismiss Plaintiff's
Complaint...............................................................................40

Robert A. Faucher (ISB #4745)
rfaucher@hollandhart.com
A. Dean Bennett (ISB #7735)
adbennett@hollandhart.com
Julie A. Hamilton (ISB #11708)
jahamilton@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
jyoungwood@stblaw.com
Meredith Karp (*Admitted Pro Hac Vice*)
meredith.karp@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAYSERVICES BANK,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL RESERVE BANK OF<br>SAN FRANCISCO,<br><br>Defendant. | Case No. 1:23-cv-00305-REP<br><br>**DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SER-003

Defendant Federal Reserve Bank of Francisco, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves the Court for its Order dismissing Plaintiff's Complaint on the grounds that Plaintiff has failed to state a claim for which relief can be granted.  This Motion is supported by Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief and the Declaration of Meredith Karp in Support of Defendant's Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief filed concurrently herewith.

Oral argument on this Motion is requested only to the extent deemed necessary by the Court.

Dated this 14th day of August, 2023.

*Respectfully submitted,*

HOLLAND & HART LLP


By: /s/ Robert A. Faucher
      Robert A. Faucher, of the firm
        *- and -*
SIMPSON THACHER & BARTLETT LLP


By: /s/ Jonathan K. Youngwood
      Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
      Meredith Karp (*Admitted Pro Hac Vice*)

*Attorneys for Defendant*

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

SER-004

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Asa Daniel Brown
asa@asabrownlaw.com

Jade A. Craig
jade@jadeacraigpa.com

/s/ Robert A. Faucher
Robert A. Faucher
of HOLLAND & HART LLP

30236166_v5

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

Robert A. Faucher (ISB #4745)
rfaucher@hollandhart.com
A. Dean Bennett (ISB #7735)
adbennett@hollandhart.com
Julie A. Hamilton (ISB #11708)
jahamilton@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869

Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
jyoungwood@stblaw.com
Meredith Karp (*Admitted Pro Hac Vice*)
meredith.karp@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAYSERVICES BANK,<br><br>       Plaintiff,<br><br>vs.<br><br>FEDERAL RESERVE BANK OF<br>SAN FRANCISCO,<br><br>       Defendant. | Case No. 1:23-cv-00305-REP<br><br>**DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SER-006

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ........................................................................................................... 3

    A.    The Federal Reserve System......................................................................... 3

    B.    Master Accounts ........................................................................................... 4

    C.    The Board's August 2022 Guidelines for Evaluating Account and Service Requests. ........................................................................................... 4

    D.    PayServices' Master Account Request ......................................................... 5

LEGAL STANDARD.................................................................................................... 6

ARGUMENT ................................................................................................................. 6

    I.    Each of PayServices' Claims Must Be Dismissed Because FRBSF Had Discretion to Deny PayServices' Request for a Master Account.................. 6

        A.    Count I (APA Claim) Fails Because Discretionary Action Is Not Reviewable. ...................................................................................... 7

            1.    The FRA Provides FRBSF with Discretion to Deny Master Accounts. ...................................................................8

            2.    Section 248a Does Not Entitle PayServices to a Master Account. ..................................................................................9

            3.    The Statutory Scheme Entrusts FRBSF with Discretion. ..............10

            4.    The Board Confirms that FRBSF Has Discretion.........................12

        B.    Count II (Mandamus Claim) Fails Because Mandamus Cannot Be Used to Compel Discretionary Action. ................................................. 13

    II.    Each of PayServices' Claims Fails Because FRBSF Is Not the Federal Government.............................................................................................. 15

    III.    Count I (APA Claim) Must Also Be Dismissed Because FRBSF's Decision Was Not Arbitrary or Capricious.......................................................... 18

    IV.    Count III (Due Process) Must Be Dismissed for the Independent Reason that PayServices Has Not Alleged that It Was Denied Procedural Protections. ............................................................................ 20

CONCLUSION.............................................................................................................. 20

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - i

SER-007

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accord N. Mgmt. Servs. v. Navigators Specialty Ins. Co.*,
  608 F. Supp. 3d 996 (D. Idaho 2022) ........................................................5

*Am. Bankers Ass'n v. United States*,
  932 F.3d 1375 (Fed. Cir. 2019) .............................................................3, 4

*Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
  75 F.3d 1401 (9th Cir. 1996) ...................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................6

*Barron v. Reich*,
  13 F.3d 1370 (9th Cir. 1994) ...................................................................13

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................6

*Biden v. Texas*,
  142 S. Ct. 2528 (2022)...............................................................................8

*Bloomberg L.P. v. Bd. of Governors of the Fed. Res. Sys.*,
  649 F. Supp. 2d 262 (S.D.N.Y. 2009) ......................................................11

*Bobka v. Toyota Motor Credit Corp.*,
  968 F.3d 946 (9th Cir. 2020) ...................................................................10

*Burch v. Smathers*,
  990 F. Supp. 2d 1063 (D. Idaho 2014) ....................................................15

*C.R. v. Eugene Sch. Dist.*,
  835 F.3d 1142 (9th Cir. 2016) ..................................................................20

*City of Sausalito v. O'Neill*,
  386 F.3d 1186 (9th Cir. 2004) ..................................................................19

*Conn. Bd. of Pardons v. Dumschat*,
  452 U.S. 458 (1981)..................................................................................15

*Custodia v. Federal Reserve Bd. Of Govs.*,
  No. 1:22-cv-00125, Doc. 164 (D. Wy. June 8, 2023)...............................9

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - ii

SER-008

*Dong v. Smithsonian Inst.*,
   125 F.3d 877 (D.C. Cir. 1997) ............................................................... 15, 16

*Doyle v. City of Medford*,
   606 F.3d 667 (9th Cir. 2010) ...................................................................... 14

*Emergency Fleet Corp. v. W. Union Tel. Co.*,
   275 U.S. 415 (1928) ................................................................................ 3, 17

*Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*,
   262 U.S. 649 (1923) ...................................................................................... 8

*Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*,
   499 F.2d 60 (1st Cir. 1974) .......................................................................... 11

*Fid. Fin. Corp. v. Fed. Home Loan Bank*,
   792 F.2d 1432 (9th Cir. 1986) .................................................................... 14

*Forest Grove School Dist. v. T.A.*,
   557 U.S. 230 (2009) ...................................................................................... 9

*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*,
   861 F.3d 1052 (10th Cir. 2017) .................................................................... 9

*Hall v. Am. Nat'l Red Cross*,
   86 F.3d 919 (9th Cir. 1996) ........................................................................ 17

*Int'l Bhd. of Teamsters v. United States DOT*,
   861 F.3d 944 (9th Cir. 2017) .................................................................... 7, 8

*Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*,
   986 F.3d 841 (9th Cir. 2021) ...................................................................... 12

*King v. Burwell*,
   576 U.S. 473 (2015) .................................................................................... 11

*Lebron v. Nat'l R.R. Passenger Corp.*,
   513 U.S. 374 (1995) .................................................................................... 17

*Lewis v. United States*,
   680 F.2d 1239 (9th Cir. 1982) ................................................................. 3, 16

*McKinley v. Bd. of Governors of the Fed. Res. Sys.*,
   647 F.3d 331 (D.C. Cir. 2011) ...................................................................... 3

*Meritage Homes of Nev., Inc. v. FDIC*,
   753 F.3d 819 (9th Cir. 2014) ........................................................................ 8

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - iii

SER-009

*MH v. Jeppesen*,
  No. 1:22-cv-00409-REP, 2023 U.S. Dist. LEXIS 108023 (D. Idaho June 20, 2023) ................ 14

*New York v. Atl. States Marine Fisheries Comm'n*,
  609 F.3d 524 (2d Cir. 2010) .................................................................................. 15

*O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*,
  92 F.3d 940 (9th Cir. 1996) .................................................................................. 18

*Ocean, Inc. v. Pritzker*,
  24 F. Supp. 3d 49 (D.D.C. 2014) ........................................................................... 12

*Opati v. Republic of Sudan*,
  140 S. Ct. 1601 (2020) ........................................................................................... 8

*Or. Nat. Res. Council v. Thomas*,
  92 F.3d 792 (9th Cir. 1996) .................................................................................... 7

*Pinnacle Armor, Inc. v. United States*,
  648 F.3d 708 (9th Cir. 2011) ........................................................................... 14, 20

*Scott v. FRB of Kan. City*,
  406 F.3d 532 (8th Cir. 2005) ........................................................................... 16, 17

*Shoshone Bannock Tribes of the Fort Hall Rsrv. v. United States*,
  575 F. Supp. 3d 1245 (D. Idaho 2021) ................................................................... 13

*Smith v. Grimm*,
  534 F.2d 1346 (9th Cir. 1976) ............................................................................... 13

*Texas Dep't of Hous. and Cmty. Affairs v. Inclusive Communities Project*,
  135 S. Ct. 2507 (2015) ......................................................................................... 8-9

*United States ex rel. Kraus v. Wells Fargo & Co.*,
  943 F.3d 588 (2d Cir. 2019) .................................................................................. 16

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................................... 5

*United States v. Snoring Relief Labs., Inc.*,
  210 F.3d 1081 (9th Cir. 2000) ............................................................................... 18

*Walkwell Int'l Labs., Inc. v. Nordian Admin. Servs., LLC*,
  No. 1:13-cv-0199-EJL, 2014 U.S. Dist. LEXIS 5282 (D. Idaho Jan. 13, 2014) ............. 15, 16, 18

*Whitman v. Am. Trucking Ass'ns*,
  531 U.S. 457 (2001) .............................................................................................. 10

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - iv

SER-010

*Witzke v. Idaho State Bar,*
   No. 1:22-cv-00090-REP, 2022 U.S. Dist. LEXIS 217217 (D. Idaho Nov. 29, 2022)..............3, 6

**Statutes and Rules**

12 U.S.C § 341 .................................................................................................3, 4, 10

12 U.S.C. § 221 ........................................................................................................3

12 U.S.C. § 241 ...................................................................................................3, 10

12 U.S.C. § 248(k) .................................................................................................16

12 U.S.C. § 248a .............................................................................................passim

12 U.S.C. § 248c ...............................................................................................11, 12

12 U.S.C. § 252 ......................................................................................................10

12 U.S.C. § 302 ......................................................................................................16

12 U.S.C. § 304 .................................................................................................16, 17

12 U.S.C. § 342 ..............................................................................................passim

12 U.S.C. § 364 ......................................................................................................10

28 U.S.C. § 1361 ....................................................................................................16

5 U.S.C. § 701 ....................................................................................................7, 15

5 U.S.C. § 706(2)(a) ................................................................................................7

Fed. R. Civ. P. 12(b)(6) ...........................................................................................6

**Regulatory Materials**

87 Fed. Reg. 51,099 ......................................................................................4, 5, 12, 19

**Other Authorities**

Anti-Money Laundering, FINRA ...............................................................................6

Monetary Policy, Credit and Liquidity Programs and the Balance Sheet,
   FederalReserve.gov (Nov. 15, 2021) .......................................................................4

Reserve Maintenance Manual, FederalReserve.gov (Nov. 19, 2018) .............................4

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - v

SER-011

Defendant Federal Reserve Bank of Francisco ("FRBSF") respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief.

## PRELIMINARY STATEMENT

Plaintiff PayServices Bank ("PayServices") is an online bank that operates no physical branches, does not carry FDIC insurance, and is not subject to prudential supervision by any federal banking agency. Its business model focuses on providing payment processing to foreign merchants, buyers and governments. This litigation concerns PayServices' request for a "master account"—a depository account that provides institutions with direct access to the Federal Reserve System.

FRBSF has discretion to grant institutions with direct access to the Federal Reserve System through a master account. After nine months of careful review, FRBSF denied PayServices' request because, consistent with guidelines established by the Board of Governors (the "Board")—the federal agency in charge of overseeing the Federal Reserve System—FRBSF determined that PayServices' business model and inadequate risk management controls opened up FRBSF and the Federal Reserve System, as a whole, to risk of illicit financial activity, including terrorism funding.

Dissatisfied with FRBSF's decision, PayServices now brings this action asking the Court to substitute its judgment for that of FRBSF. PayServices asserts three claims—under (1) the Administrative Procedure Act ("APA"), (2) the Mandamus Act and (3) the Due Process clause—all of which seek the same relief: a court order requiring FRBSF to grant PayServices a master account. PayServices' fundamental contention is that FRBSF had no discretion to evaluate PayServices' master account request and instead should have rubber-stamped the request. This reading is inconsistent with principles of statutory construction, and in direct contravention of the Board's guidelines, which were published after two rounds of notice and comment. FRBSF is not required

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

to grant PayServices direct access to the Federal Reserve System and ignore the financial, reputational, and other risks posed by doing so.

PayServices' Complaint should be dismissed with prejudice for the following reasons:

*First,* all three claims must be dismissed because FRBSF has discretion to deny master accounts. Section 342 of the Federal Reserve Act ("FRA")—the only statutory provision that governs FRBSF's administration of master accounts—provides FRBSF with discretion to deny master account requests. *See* Section I.A.1. Section 248a—the sole statutory provision on which PayServices relies—is a price discrimination provision which does not entitle PayServices to a master account and, in any event, does not apply to FRBSF. *See* Section I.A.2. Moreover, both the statutory scheme of the FRA taken as a whole and the Board's interpretation of the FRA confirm that FRBSF has discretion (and in fact, an obligation) to deny master account requests from institutions that pose undue risk to the Federal Reserve System. *See* Section I.A.3-4. Because each of PayServices' claims requires PayServices to establish that FRBSF had a non-discretionary duty to grant its request for a master account, all three claims must be dismissed.

*Second,* all three claims must be dismissed because FRBSF is not a federal agency or branch of the government—an express requirement to state a claim under the APA (Count I), the Mandamus Act (Count II), or the Due Process clause (Count III).

*Third,* PayServices' APA claim (Count I) must also be dismissed because PayServices concedes that FRBSF followed the standards established by the Board and, in any event, does not plead any facts showing that FRBSF's decision was arbitrary or capricious. *See* Section III.

*Finally*, PayServices' Due Process claim (Count III) must also be dismissed because PayServices received notice and an opportunity to be heard.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

SER-013

# BACKGROUND[1]

### A.      The Federal Reserve System

In 1913, Congress created the Federal Reserve System to serve as the nation's central bank. *See* 12 U.S.C. § 221 *et seq.* (the "Federal Reserve Act" or the "FRA"). Congress passed the FRA "to oversee banking operations and promote [] greater economic stability." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1378 (Fed. Cir. 2019). The Federal Reserve System is composed of private and public entities. Two parts are relevant here: the Board and the Reserve Banks. The Board is a federal agency whose members are appointed by the President. 12 U.S.C. § 241. Consistent with its role as an agency, the Board exercises general rulemaking authority and acts as the "central supervisory authority of the Federal Reserve System." *McKinley v. Bd. of Governors of the Fed. Res. Sys.*, 647 F.3d 331, 333 (D.C. Cir. 2011).

By contrast, the regional Reserve Banks are federally chartered corporations which serve governmental interests but stand apart from the government. *See Emergency Fleet Corp. v. W. Union Tel. Co.*, 275 U.S. 415, 425-26 (1928) ("Instrumentalities like . . . the federal reserve banks, in which there are private interests, are not departments of the government."). They serve as the System's operating arms, subject to the supervision of the Board. *See* 12 U.S.C § 341 *et seq.*; *see also* Compl. ¶ 76. In effect, Reserve Banks operate as bankers' banks to much of the banking industry. They carry out banking functions (many of which echo those that commercial banks provide to end-user customers), including collecting and clearing checks, making advances to commercial entities, and holding reserves for depository institutions. *Lewis v. United States*, 680 F.2d 1239, 1241 (9th Cir. 1982) (describing operations of the Reserve Banks).

---

[1] The well-pled factual allegations from the Complaint are accepted as true solely for purposes of this Motion. *Witzke v. Idaho State Bar*, No. 1:22-cv-00090-REP, 2022 U.S. Dist. LEXIS 217217, at *15 (D. Idaho Nov. 29, 2022) (Patricco, J.).

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 3

### B.      Master Accounts

A master account is a deposit account that permits a depository institution to make deposits into and withdrawals from an account held at and administered by its regional Reserve Bank.[2]  The Reserve Bank holding the account manages the credit risk posed by the institution's use of Federal Reserve services.  *Id.*  A Reserve Bank account holder's deposits—as recorded in a master account—sit on the Federal Reserve's balance sheet as liabilities.[3]

As federally chartered corporations, the scope of services that Reserve Banks may offer are defined by 12 U.S.C § 341 *et seq.*  Relevant here, 12 U.S.C. § 342 permits Reserve Banks to open deposit accounts (such as master accounts) and provides that "[a]ny Federal reserve bank may receive from any of its member banks, or other depository institutions . . . deposits of current funds in lawful money. . . ."  Originally, deposit accounts with Reserve Banks were limited to the U.S. government and the Federal Reserve "member" banks.[4]  In 1980, Congress passed the Monetary Control Act of 1980, Pub. L. No. 96-221, to give Reserve Banks the option to offer services and accounts to eligible nonmember depository institutions.  *See* 12 U.S.C. § 342.

### C.      The Board's August 2022 Guidelines for Evaluating Account and Service Requests

In light of the rapidly changing landscape of novel state charters and increased efforts to obtain direct access to the Federal Reserve Systems, the Board enacted "Guidelines for Evaluating Account and Services Requests" ("Guidelines"), which became effective on August 19, 2022, after two rounds of notice-and-comment.  87 Fed. Reg. 51,099; Compl. ¶ 78.  The Guidelines set forth six principles for Reserve Banks to use in evaluating access requests.  87 Fed. Reg. at 51,106-109.

---

[2] Reserve Maintenance Manual, FederalReserve.gov (Nov. 19, 2018), https://bit.ly/3QnjMUl.
[3] *See* Monetary Policy, Credit and Liquidity Programs and the Balance Sheet, FederalReserve.gov (Nov. 15, 2021), https://bit.ly/3dnokva.
[4] Member banks are subject to supervision by the Board and are required to hold stock in their regional Reserve Bank.  *Am. Bankers Ass'n*, 932 F.3d at 1379.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 4

They established a three-tiered review framework "to serve as a guide to the level of due diligence and scrutiny to be applied by Reserve Banks to different types of institutions," with "institutions in a higher tier [] on average fac[ing] greater due diligence and scrutiny." *Id.* at 51,109. The three tiers are: "Tier 1: Eligible institutions that are federally insured"; "Tier 2: Eligible institutions that are not federally insured but are subject (by statute) to prudential supervision by a federal banking agency"; and "Tier 3: Eligible institutions that are not federally insured and are not considered in Tier 2." *Id.* at 51,109-10. The Guidelines state that "a Reserve Bank has the authority to grant or deny an access request by an institution in any of the three proposed tiers . . . on a case-by-case, risk-focused basis[.]" *Id.* at 51,109.

### D.     PayServices' Master Account Request

PayServices is an exclusively online bank, "operates no physical branches," and does not carry FDIC insurance. Compl. ¶ 46. Its business model "focuses almost exclusively on facilitating trade of commodities for the small to medium enterprises from and to the United States." *Id.* ¶ 44. *See also* Exhibit A to the Declaration of Meredith Karp in Support of Defendant's Motion to Dismiss ("Ex. A").[5]   On August 3, 2022, PayServices—whose founder resides in Florida—received preliminary approval to establish a state-chartered bank in Idaho. Compl. ¶¶ 3; 40. On August 10, 2022, PayServices requested a master account from FRBSF. *Id.* ¶ 23. On May 31, 2023, FRBSF denied PayServices' request because it did "not meet the standards outlined in the [Guidelines]." Ex. A; *see also* Compl. ¶ 85. In its denial letter, FRBSF found that PayServices' "novel, monoline

---

[5] FRBSF's decision denying PayServices' request is incorporated by reference into the Complaint because it forms the basis of Plaintiff's Complaint and because Plaintiff refers extensively to the letter. *See* Compl. ¶¶ 36; 43; 50; 85. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("a document . . . may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). Because the denial letter is incorporated by reference, the Court may treat it "as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss." *Id.*; *Accord N. Mgmt. Servs. v. Navigators Specialty Ins. Co.,* 608 F. Supp. 3d 996, 999 n.2 (D. Idaho 2022).

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 5

business model and focus on transactions that are largely foreign in nature or involve mostly foreign participants presents undue risks." *Id.* Specifically, FRBSF found that that PayServices' "unproven risk management framework" was insufficient "to mitigate money laundering and terrorism financing risks." *Id.* FRBSF highlighted multiple specific concerns, including "[Bank Secrecy Act, Anti-Money Laundering, and Office of Foreign Assets Control][6] risk management," "the limited banking and bank-specific risk management experience among management," and the possibility that the master account could be used to "fund or facilitate illicit activity." *Id.*

## LEGAL STANDARD

A court may dismiss a lawsuit when the complaint fails to state a claim. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Conclusory allegations, unwarranted deductions of fact, and unreasonable inferences need not be accepted as true." *Witzke*, 2022 U.S. Dist. LEXIS 217217, at *15.

## ARGUMENT

**I.      Each of PayServices' Claims Must Be Dismissed Because FRBSF Had Discretion to Deny PayServices' Request for a Master Account.**

PayServices asserts three claims against FRBSF: (1) an APA claim, (2) a mandamus claim, and (3) a Due Process claim. Each claim alleges that FRBSF is required to provide master accounts to *all* nonmember depository institutions, including PayServices, regardless of the risks presented. *See, e.g.*, Compl. ¶¶ 81; 95; 103. But each claim fails as a matter of law because the plain text of

---

[6] Bank Secrecy Act and Anti-Money Laundering controls serve to "detect and report suspicious activity," including money laundering, terrorist financing, and securities fraud. *See* Anti-Money Laundering, FINRA, bit.ly/3qyzowg (last visited Aug. 13, 2023). In the absence of these controls, the depository institution—and as a result, the Federal Reserve System—could be used to facilitate illicit activity causing significant financial and reputational risk.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 6

Section 342 of the FRA provides FRBSF with discretion to deny master account requests. PayServices' claims rest solely on Section 248a—a price discrimination provision which does not entitle any entity to a master account.  In any event, the purpose of the FRA as a whole and the Board's interpretation of the FRA confirm that FRBSF not only has discretion to deny master accounts, but also has an obligation to deny accounts that pose a risk to the Federal Reserve System.

### A.     Count I (APA Claim) Fails Because Discretionary Action Is Not Reviewable.

PayServices brings a claim under the APA alleging that FRBSF's denial of its application was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because FRBSF purportedly "has a non-discretionary duty to make available [to PayServices] Federal Reserve bank services through master accounts."  Compl. ¶¶ 81; 84.  Count I must be dismissed because FRBSF had discretion to deny PayServices' request for a master account, and this Court lacks jurisdiction under the APA to review discretionary actions.

Under the APA, courts can "set aside final agency[7] action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  *Int'l Bhd. of Teamsters v. United States DOT*, 861 F.3d 944, 951-52 (9th Cir. 2017) (quoting 5 U.S.C. § 706(2)(a)).  However, not all agency actions are reviewable under the APA.  The APA expressly precludes review of "agency action," which is "committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  As the Ninth Circuit has held, it is "well-settled that the touchstone of reviewability under [the APA] is whether there's 'law to apply.'"  *Or. Nat. Res. Council v. Thomas*, 92 F.3d 792, 798-99 (9th Cir. 1996) (holding that "where there is no law to apply for purposes of [the APA], it is legally irrelevant whether an agency has made a 'finding' that is 'contrary to the evidence before it' or that's 'so implausible that it couldn't be ascribed to a difference in view or the product of agency expertise.'").

---

[7] As a threshold matter, FRBSF is not an "agency" and thus not subject to the APA.  *See infra* Section II.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 7

SER-018

Thus, courts have no jurisdiction to review agency action under the APA when "[a] statute is drawn

so that a court would have no meaningful standard against which to judge the agency's exercise of

discretion." *Int'l Bhd. of Teamsters*, 861 F.3d at 954.

Here, the review of master accounts is plainly committed to FRBSF's discretion. As a result,

PayServices' APA claim must be dismissed.

### 1.    The FRA Provides FRBSF with Discretion to Deny Master Accounts.

PayServices' APA claim fails because FRBSF has discretion to deny a master account under

the FRA. Master accounts are governed by Section 342, which empowers, but does not require,

Reserve Banks to open such accounts. Section 342 provides that a Reserve Bank "*may* receive from

any of its member banks, or other depository institutions, . . . deposits . . ." 12 U.S.C. § 342

(emphasis added). "'[M]ay' does not just suggest discretion, 'it *clearly* connotes it.'" *Biden v.

Texas*, 142 S. Ct. 2528, 2541 (2022) (citation omitted) (emphasis in original); *Opati v. Republic of

Sudan*, 140 S. Ct. 1601, 1604 (2020) (same); *Meritage Homes of Nev., Inc. v. FDIC*, 753 F.3d 819,

826 (9th Cir. 2014) ("'may,' when used in a statute, usually implies some degree of discretion").

Reserve Banks' discretion to receive deposits includes the discretion to decline to receive

deposits from an institution. Indeed, the Supreme Court's long-standing precedent establishes that

Section 342 does not "impose[] upon reserve banks any obligation to receive" deposits; it merely

"confers authority to do so." *Farmers & Merchs. Bank v. Fed. Rsrv. Bank of Richmond*, 262 U.S.

649, 662 (1923) (noting that although Section 342 had been amended multiple times, "in each

amendment . . . the words used were 'may receive'—words of authorization merely"). Indeed, when

Congress amended Section 342 in the Monetary Control Act, it did not alter the permissive "may"

language. 94 Stat. 132, 139. Congress can therefore be presumed to have "accepted and ratified"

the Supreme Court's reading of "may receive" in Section 13 as discretionary in nature. *Texas Dep't*

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 8

SER-019

*of Hous. and Cmty. Affairs v. Inclusive Communities Project*, 135 S. Ct. 2507, 2520 (2015); *see also*

*Forest Grove School Dist. v. T.A.*, 557 U.S. 230, 244 n.11 (2009) ("When Congress amended [the

Act] without altering the text [of the relevant provision], it implicitly adopted [the Supreme Court's]

construction of the statute."). Thus, while Reserve Banks have the authority to accept deposits—

and therefore, to grant accounts to depository institutions—the FRA does not require them to do so.

### 2.    Section 248a Does Not Entitle PayServices to a Master Account.

Throughout its Complaint, PayServices contends that 12 U.S.C. § 248a requires FRBSF to

grant it a master account. *See* Compl. ¶¶ 81; 103. But Section 248a is irrelevant here. The plain

text of Section 248a neither entitles PayServices to a master account nor imposes any duties on

Reserve Banks. Instead, Section 248a instructs the Board (not FRBSF) to guarantee that the Federal

Reserve System does not price discriminate between member and nonmember banks. Nothing in

this price discrimination provision prevents Reserve Banks from denying an institution's request for

a master account.[8]

First, Section 248a does not require FRBSF to grant every master account request. Section

248a, titled "Pricing of services," provides that "the Board shall publish for public comment a set of

pricing principles . . . for Federal Reserve bank services to depository institutions" and instructs the

Board "to put into effect a schedule of fees for such services which is based on those principles." 12

U.S.C. § 248a(a). Once the Board has established a fee schedule, "[a]ll Federal Reserve bank services

---

[8] FRBSF is aware that the District Court for the District of Wyoming recently denied a motion to
dismiss a complaint alleging the improper denial of a master account. *See Custodia v. Federal
Reserve Bd. Of Govs.*, No. 1:22-cv-00125, Doc. 164 (D. Wy. June 8, 2023). However, *Custodia* did
not hold that Section 248a applied to Reserve Banks as a matter of law. Instead, the decision was
"based mostly" on one opinion in a three-way split decision of the Tenth Circuit, *id.* at 10-12 (citing
*Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1053-54 (10th Cir.
2017)), which the *Custodia* court found "may plausibly be the law on this matter in this case" at the
motion to dismiss stage. *Id.* at 10. The Court expressly deferred on questions of statutory
interpretation. *Id.*

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 9

covered by the fee schedule shall be priced explicitly," *id.* § 248a(c)(1) and "[a]ll Federal Reserve bank services covered by the fee schedule shall be available to nonmember depository institutions and such services shall be priced at the same fee schedule applicable to member banks." *Id.* § 248a(c)(2). In effect, Section 248a is an anti-price discrimination provision. It provides that a nonmember bank which has access to the Federal Reserve System will pay the same for those services as a member bank. But Section 248a says nothing about whether a depository institution is entitled to a master account in the first instance, nor does it *entitle* any institution to a master account.

Second, Section 248a does not impose any duty on Reserve Banks at all. This provision—contained in subchapter of the FRA titled "Board of Governors of the Federal System"—applies only to the Board. *Compare* 12 U.S.C. §§ 241-52 *with* 12 U.S.C. §§ 341-64 (subchapter titled "Powers and Duties of Federal Reserve Banks"). *See Bobka v. Toyota Motor Credit Corp.*, 968 F.3d 946, 954 (9th Cir. 2020) ("[T]he title of a statute or section can aid in resolving an ambiguity in the legislation's text."). It directs the Board, not the Reserve Banks, to take certain actions. *See* § 248a(a) ("the *Board* shall publish for public comment a set of pricing principles"); *id.* § 248a(d) ("The *Board* shall require reductions in the operating budgets of the Federal Reserve banks"). It would be anomalous for Congress to hide a requirement that Reserve Banks must grant direct master accounts to all depository institutions, irrespective of risk presented, in a provision that is not even addressed to the Reserve Banks. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) (courts should interpret statutes with a recognition that Congress does not "hide elephants in mouseholes").

In all, Section 248a—the only statutory provision on which PayServices relies—is inapplicable on its face. As a result, PayServices' APA claim must be dismissed.

### 3.    The Statutory Scheme Entrusts FRBSF with Discretion.

PayServices' position—that every eligible depository institution holding any state charter is automatically entitled to a master account, regardless of its risk profile (Compl. ¶¶ 60-64; 95-96)—

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 10

SER-021

puts each individual state or territory in control of direct access to the national payment system without room for Reserve Bank review. But stripping Reserve Banks of their power (and duty) to manage risk is inconsistent with the very purpose of the FRA.

Construing Section 248a as granting an unconditional right of access to Reserve Bank master accounts would undermine the purpose of the FRA, in derogation of basic principles of statutory construction. *See King v. Burwell*, 576 U.S. 473, 492 (2015) (statutes should be construed in light of the "remainder of the statutory scheme [to favor readings with] a substantive effect that is compatible with the rest of the law."). First, Congress charged the Federal Reserve System with oversight of the nation's payment system "in furtherance of the national fiscal policy." *See Fed. Rsrv. Bank of Boston v. Comm'r of Corps. & Tax'n*, 499 F.2d 60, 62 (1st Cir. 1974). Permitting every single state and territory to dictate which entities can directly access the Federal Reserve System—with *no* room for federal oversight—would remove a vital tool for the Reserve Banks to guard against money laundering, contain cybersecurity breaches, or address a myriad of other risks. Second, the purpose of the Monetary Control Act, in which Section 248a was first enacted, is to "facilitate the implementation of monetary policy," 94 Stat. 132. PayServices' construction of Section 248a would undermine the Federal Reserve System's ability to carry out its statutory mandate to regulate the money supply to promote maximum stability. In all, nothing in the text or history of the FRA suggests that Congress intended to substitute the judgment of an individual state for that of the Federal Reserve System to maintain the "stability of financial systems and markets." *Bloomberg L.P. v. Bd. of Governors of the Fed. Res. Sys.*, 649 F. Supp. 2d 262, 265 (S.D.N.Y. 2009).

Further, Congress recently confirmed that Reserve Banks can deny requests for master accounts. In December 2022, Congress amended the FRA to require the Board to "create and maintain a public, online, and searchable database" that includes "a list of every entity that submits an access request for a reserve bank master account and services . . . including whether . . . a request

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 11

SER-022

was approved, *rejected*, pending, or withdrawn." 12 U.S.C. § 248c(b)(1) (emphasis added). The statute indicates that each entry on the list must specify whether the requesting entity was "an insured depository institution," "an insured credit union," or a "depository institution that is not an insured depository institution." *Id.* § 248c(b)(1)(C). Thus, by its plain terms, Congress specifically contemplated that requests for master accounts from uninsured depository institutions (such as PayServices here) may be "rejected." It strains credulity to assume that Congress mandated the Federal Reserve System to track all rejected applications for master accounts if the Reserve Banks had no discretion to reject master accounts in the first place.

### 4.    The Board Confirms that FRBSF Has Discretion.

The Board—the agency in charge of overseeing the Federal Reserve System—promulgated guidelines confirming that Reserve Banks have discretion to deny master accounts. It is beyond dispute that an agency usually receives "deference in its construction of an ambiguous statute that it administers." *Int'l Bhd. of Teamsters, Local 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841, 849 (9th Cir. 2021); *Ocean, Inc. v. Pritzker*, 24 F. Supp. 3d 49, 70 (D.D.C. 2014) (holding that agency guidance published through a "formal process" deserves "considerable deference"). Here, the Guidelines repeatedly recognize that "decisions regarding individual access requests remain at the discretion of the individual Reserve Banks." 87 Fed. Reg. 51,106; *id.* at 51,100 (noting the "discretion granted to the Reserve Banks under the Federal Reserve Act to grant or deny access Requests"). This Court should defer to the Board's reasonable interpretation of the FRA.

In fact, not only do the Guidelines permit FRBSF to exercise discretion, they require the Reserve Banks to ensure that the institution requesting an account does not present undue risk to the Federal Reserve System. The Guidelines "apply to requests *from all institutions* that are legally eligible to receive an account." 87 Fed. Reg. 51,106 (emphasis added). And on at least 12 separate occasions, the Guidelines state that Reserve Banks "should confirm" or "should consider" various

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 12

factors in evaluating requests for Master Accounts, which underscores the Reserve Banks' use of discretion when making decisions. *Id.* at 51,107-10.

*        *        *

In all, Section 342—the only relevant provision of the FRA—clearly provides FRBSF with discretion to deny master accounts, and Section 248a, the sole statutory provision on which PayServices relies to establish FRBSF's "non-discretionary" duty is inapplicable on its face. Moreover, the purpose of the FRA, Congress's recent amendment to the FRA, and the Board's interpretation of the FRA each independently confirm that FRBSF has discretion to deny master account requests.  And because this Court has no jurisdiction under the APA to review actions committed to FRBSF's discretion, PayServices' APA claim fails as a matter of law.

### B. Count II (Mandamus Claim) Fails Because Mandamus Cannot Be Used to Compel Discretionary Action.

PayServices brings a claim for relief under the Mandamus Act, requesting this Court to direct FRBSF to "rescind denial of PayServices' master account application and instead grant the application." Compl. ¶ 92.  PayServices is not entitled to the "extraordinary remedy" of a writ of mandamus, *Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir. 1994), because a writ of mandamus cannot be granted to compel discretionary action.

"[M]andamus is traditionally proper only to command an official to perform an act which is a positive command and so plainly prescribed as to be free from doubt."  *Shoshone Bannock Tribes of the Fort Hall Rsrv. v. United States*, 575 F. Supp. 3d 1245, 1260 (D. Idaho 2021) (quoting *Smith v. Grimm*, 534 F.2d 1346, 1352 (9th Cir. 1976)).  Critically, "mandamus may not be used to impinge upon an official's legitimate use of discretion."  *Barron*, 13 F.3d at 1376.  Here, PayServices seeks to do just that.  The Complaint contends that "[m]andamus is appropriate here because PayServices has a clear and certain claim to have its master account application granted."   Compl. ¶ 95.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 13

SER-024

PayServices contends that its "valid Idaho bank charter" entitles it to a master account. *Id.* ¶ 95-96. But the FRA puts the Board and Reserve Banks—not individual states or territories—in charge of monitoring the Federal Reserve System. *See supra* Section I.A.4. The only other provision PayServices cites to support its "clear and certain" claim is Section 248a. Compl. ¶ 95. But Section 248a is inapplicable, and instead, Section 342 grants FRBSF discretion to deny such accounts. *See* Section I.A.1-4. Because mandamus is improper where, as here, a defendant is afforded statutory discretion, Count II must be dismissed.

### C.    Count III (Due Process Claim) Fails Because PayServices Has No Protected Property Interest in a Discretionary Benefit.

PayServices brings a Due Process claim, alleging that "FRBSF has deprived PayServices of a protectible property interest – namely, access to a Federal Reserve master account." Compl. ¶ 101. Count III fails because PayServices has no protected property interest in a master account that FRBSF has discretion to deny.

To state a procedural Due Process claim, a plaintiff must allege the deprivation of a protected property interest. *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011). As this Court has held, "if government officials have the discretion to grant or deny a benefit, that benefit is not a protected property interest." *MH v. Jeppesen*, No. 1:22-cv-00409-REP, 2023 U.S. Dist. LEXIS 108023, at *43 (D. Idaho June 20, 2023) (Patricco, J.); *see also Doyle v. City of Medford*, 606 F.3d 667, 672 (9th Cir. 2010) ("A regulation granting broad discretion to a decision-maker does not create a property interest."). For this reason, the Ninth Circuit has dismissed Due Process claims against federally chartered banks (like FRBSF) where the relevant statute does "not impose particularized standards or criteria that significantly constrain the Bank's discretion to deny" the benefit. *Fid. Fin. Corp. v. Fed. Home Loan Bank*, 792 F.2d 1432, 1436 (9th Cir. 1986).

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 14

SER-025

The only "property" interest PayServices identifies is "access to a Federal Reserve master account." Compl. ¶ 101.  Here, again, PayServices' only support for this proposition is that "Section 248a requires the issuance of master accounts." *Id.* ¶ 103.  For the same reasons stated above, that is not true: FRBSF has discretion to deny master accounts.  *See supra* Section I.A.1-4.  And because FRBSF has discretion, PayServices has no protected property interest in a master account, and PayServices' Due Process claim must be dismissed.[9]

## II. Each of PayServices' Claims Fails Because FRBSF Is Not the Federal Government.

Each of PayServices' claims fails for the independent reason that FRBSF is not a federal agency or branch of the government, as required to state each of its claims.

*First*, the Reserve Banks are not "agencies" under the APA and, as such, this Court lacks subject matter jurisdiction over Count I.  *Walkwell Int'l Labs., Inc. v. Nordian Admin. Servs., LLC*, No. 1:13-cv-0199-EJL, 2014 U.S. Dist. LEXIS 5282, at *17-18 (D. Idaho Jan. 13, 2014) (dismissing APA claim against federal contractor for lack of jurisdiction). The APA defines "agency" as an "authority of the Government of the United States." 5 U.S.C. § 701(b)(1).  Courts have cautioned that "[t]he wording of section 701(b)(1) indicates that we should not give the definition of 'agency' a more expansive reading" than what is present in the text.  *New York v. Atl. States Marine Fisheries Comm'n,* 609 F.3d 524,532 (2d Cir. 2010).  To qualify as an agency, an entity must "exercise substantial independent authority" or be the "center of gravity in the exercise of administrative power."  *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997).

---

[9] PayServices makes passing reference to "Exim Bank," Compl. ¶¶ 50-51, and "a dozen banks chartered under the Idaho Bank Act."  *Id.* ¶ 72.  Although PayServices does not allege that FRBSF provided a master account to Exim Bank, PayServices alleges that FRBSF provided master accounts to the other Idaho chartered banks.  To the extent PayServices contends that FRBSF's decision to grant these institutions a master account creates a "property interest," PayServices is mistaken.  "A constitutional entitlement cannot be created . . . merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past."  *Burch v. Smathers*, 990 F. Supp. 2d 1063, 1072 (D. Idaho 2014) (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981).

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 15

SER-026

Here, PayServices alleges that the FRBSF operates under the "ultimate control of the Federal Reserve Board of Governors, an independent federal regulatory agency." Compl. ¶ 76. Still, PayServices alleges that FRBSF is an agency because the "Board has delegated substantial decision making authority to the Federal Reserve banks" and by virtue of that delegated authority, "FRBSF possesses substantial independent authority in the exercise of specific functions and has authority in law to make decisions." *Id.* ¶ 80. But the only "decision-making" authority alleged in the Complaint is the ability to process a master account review (*id.* ¶ 81)—which PayServices alleges is a "non-discretionary" duty, not a decision-making function.

In any event, FRBSF's ability to decide whether to grant an eligible financial institution a master account does not make FRBSF the "center of gravity in the exercise of administrative power" under the APA.[10] *Dong*, 125 F.3d at 881-82 (holding that defendant's decision-making authority did not render it a government agency); *Nordian*, 2014 U.S. Dist. LEXIS 5282, at *17-18 (same).

Indeed, Reserve Banks have none of the traditional hallmarks of a federal agency: they cannot "promulgate regulations having the force and effect of law," *Scott v. FRB of Kan. City*, 406 F.3d 532, 536 (8th Cir. 2005); 12 U.S.C. § 248(k) (prohibiting the Board from delegating "rulemaking" to the Reserve Banks); they "receive no appropriated funds from Congress," *Lewis*, 680 F.2d at 1242; and the government appoints only a minority of their directors, 12 U.S.C. §§ 302; 304. In fact, "Congress has considered the status of the [Reserve Banks] on multiple occasions and decided not to convert them formally into government agencies." *United States ex rel. Kraus v. Wells Fargo & Co.*, 943 F.3d 588, 598 (2d Cir. 2019) (holding that Reserve Banks are not agencies under the False Claims Act). Because FRBSF is not a federal agency, Count I must be dismissed.

---

[10] The Ninth Circuit has held that Reserve Banks are not federal agencies under the Federal Torts Claims Act. *Lewis*, 680 F.2d at 1241. And the Federal Torts Claims Act defines agency more broadly than the APA. *See Dong*, 125 F.3d at 878-80.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 16

SER-027

*Second,* PayServices is similarly not entitled to a writ of mandamus.  The Mandamus Act, 28 U.S.C. § 1361, grants district courts the authority to issue a writ of mandamus compelling an "officer" or "employee" of the United States or "any agency thereof to perform a duty owed to the plaintiff."  PayServices alleges that mandamus is proper because "FRBSF's president is 'an officer . . . of the United States."  Compl. ¶ 94.   But the "federal reserve banks . . . are not departments of the government," *Emergency Fleet Corp.*, 275 U.S. at 426, and as discussed above, they are not federal agencies.  *See also Scott*, 406 F.3d at 537 ("no statute designates Federal Reserve Banks as federal agencies").  As a result, Count II must be dismissed.

*Third,* PayServices' Due Process claim must similarly be dismissed because the Due Process clause applies "only to the federal government."  *Am. Bankers Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1406 (9th Cir. 1996).  Whether a federally chartered corporation is the "federal government" for purposes of the Due Process clause depends on two factors: (1) "the extent to which its objectives are governmental," and (2) "the extent to which the government directs and controls the corporation's pursuit of those objectives."  *Id.*  The control prong is not satisfied where, as here, the government does "not control[] the operation of [the federal corporation] through its appointees."  *Id.* at 1407 (citing *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995)).

The Ninth Circuit's decision in *American Bankers* is instructive here.  The Ninth Circuit held that the Federal Home Loan Mortgage Corporation—which, like FRBSF, is a federally chartered corporation subject to supervision by a federal agency—was not the federal government for purposes of the Due Process clause because the U.S. government appointed a minority of its board of directors.  *Id.*  Here, too, the government only appoints one-third of the FRBSF Board of Directors.  12 U.S.C. §§ 302; 304.  As a result, FRBSF is not the federal government, and PayServices' Due Process claim must be dismissed.  *See Hall v. Am. Nat'l Red Cross*,86 F.3d 919, 922 (9th Cir. 1996) (holding that the Red Cross, although a federal instrumentality for some

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 17

purposes, was not a "government actor" because "the government has not retained permanent authority to appoint the majority of the Red Cross governing board").

## III.    Count I (APA Claim) Must Also Be Dismissed Because FRBSF's Decision Was Not Arbitrary or Capricious.

PayServices' APA claim also fails because PayServices has not pled facts showing that FRBSF's decision was arbitrary or capricious. Compl. ¶ 84. Under the APA, a court can set aside agency action that is arbitrary or capricious. Review under "the arbitrary and capricious standard is narrow, and the reviewing court may not substitute its judgment for that of the agency." *United States v. Snoring Relief Labs., Inc.*, 210 F.3d 1081, 1085 (9th Cir. 2000) (citations omitted). "A decision is arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or product of agency expertise." *O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n*, 92 F.3d 940, 942 (9th Cir. 1996) (citations omitted). PayServices here fails to meet this exacting standard. As a threshold matter, PayServices expressly pleads that FRBSF based its denial of PayServices' application on the Guidelines. Compl. ¶ 85. A "plaintiff has no right to sue for a violation of the APA in the absence of a relevant statute whose violation forms the legal basis for the complaint." *Nordian*, 2014 U.S. Dist. LEXIS 5282, at *18. And here, PayServices has not alleged that FRBSF violated any relevant standard, except for Section 248a which, as stated above, does not apply here. As a result, its APA claim must be dismissed.

In any event, PayServices does not plead facts showing that FRBSF's decision was inconsistent with the Guidelines—the only possibly relevant standard by which to judge FRBSF's discretion. First, PayServices does not allege that FRBSF improperly categorized it as a Tier 3 entity. Nor could it: a Tier 3 entity is any entity that is not federally insured and is not subject to

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 18

prudential supervision by a federal regulator.  87 Fed. Reg. 51,109-110.  PayServices does not allege

that it is subject to federal supervision and concedes it is not insured.  Compl. ¶¶ 17-18.

Second, PayServices appears to allege that FRBSF made the wrong decision because

PayServices' business model posed no risk to the Federal Reserve System, *see id.* ¶¶ 27-31, 34-39, and

because its current business plan projections make up only a fraction of the total Federal Reserve

balance sheet, *see id.* ¶ 58.  But a Court cannot overturn FRBSF's decision under the APA merely

because PayServices disagrees with the result.  To the contrary, this Court "*must uphold agency*

*decisions* so long as the agencies have 'considered the relevant factors and articulated a rational

connection between the factors found and the choices made.'"  *City of Sausalito v. O'Neill*, 386 F.3d

1186, 1206 (9th Cir. 2004) (emphasis added).

Here, FRBSF's denial letter applies the factors laid out in the Guidelines.  Ex. A.  For example,

the Guidelines instruct FRBSF to assess whether an institution "present[s] or create[s] undue credit,

operational, settlement, cyber, or other risks to the" Reserve Banks, or whether an institution may

"facilitate . . . illicit activity."  87 Fed. Reg. at 51,107.  To guide this assessment, the Reserve Banks

were instructed to "confirm that the institution has an effective risk management framework."  *Id.*

Consistent with that guidance, FRBSF denied PayServices' application[11] because PayServices'

"unproven risk management framework" was insufficient "to mitigate money laundering and terrorism

financing risks."  Ex. A.  FRBSF specifically cited inadequate controls in "[Bank Secrecy Act, Anti-

Money Laundering, and Office of Foreign Assets Control] risk management," "cyber and information

security risk management," and "enterprise risk management," along with "the limited banking and

bank-specific risk management experience among management[.]"  *Id.*

---

[11] Plaintiff also alleges that FRBSF "never presented any specific barriers to approval prior to the
issuance of a denial."  Compl. ¶ 83.  But the APA does not require FRBSF to provide explanations
"prior" to issuing a denial.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 19

In sum, Plaintiff's APA claim also fails as a matter of law because it cannot show that FRBSF's decision to deny PayServices' master account request was arbitrary or capricious.

## IV.    Count III (Due Process) Must Be Dismissed for the Independent Reason that PayServices Has Not Alleged that It Was Denied Procedural Protections.

PayServices' procedural Due Process claim also fails because PayServices received all the procedural protections required by law.[12]    A procedural Due Process claim requires "(1) a protect[ed] liberty or property interest . . . and (2) a denial of adequate procedural protections." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (citations omitted).

Even if a master account was a protected property interest (which, for the reasons discussed above, it is not), "[a]ll that is required before a deprivation of a protected interest is 'notice and opportunity for hearing *appropriate* to the nature of the case.'"  *Pinnacle*, 648 F.3d at 717.  Here, PayServices expressly pleads that it received two opportunities to meet with FRBSF.  Compl. ¶¶ 16; 23.  It admits that it was permitted to submit written evidence.  *Id.* ¶¶ 24; 25.  And it admits that it received a written decision explaining the basis for FRBSF's decision.  *Id.*  ¶ 43.  On this record, PayServices has not been denied any procedural protections, and its Due Process claim must be dismissed.  *Pinnacle*, 648 F.3d at 717 (dismissing Due Process claim when plaintiff "had ample opportunities to submit evidence both before and after the Notice was revoked" and the state actor "explained its decision . . . even if no formal administrative hearings took place").

## CONCLUSION

For the foregoing reasons, Defendant FRBSF respectfully requests this Court to dismiss PayServices' Complaint with prejudice.

---

[12] Plaintiff in passing references a substantive Due Process claim.  *See* Compl. ¶ 100. "Substantive due process protects an individual's fundamental rights."  *C.R. v. Eugene Sch. Dist.*, 835 F.3d 1142, 1154 (9th Cir. 2016).  But PayServices does not have a fundamental right to directly access the Federal Reserve System, and, in any event, PayServices concedes that it still can access the Federal Reserve System through an intermediary bank.  Compl. ¶¶ 1; 98.

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 20

Dated this 14th day of August, 2023.

*Respectfully submitted,*

HOLLAND & HART LLP

By: <u>/s/ Robert A. Faucher</u>
    Robert A. Faucher

    *- and -*

SIMPSON THACHER & BARTLETT LLP

By: <u>/s/ Jonathan K. Youngwood</u>
    Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
    Meredith Karp (*Admitted Pro Hac Vice*)

*Attorneys for Defendant*

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 21

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Asa Daniel Brown
asa@asabrownlaw.com

Jade A. Craig
jade@jadeacraigpa.com


 /s/ Robert A. Faucher
Robert A. Faucher
of HOLLAND & HART LLP

DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 22

Robert A. Faucher (ISB #4745)
rfaucher@hollandhart.com
A. Dean Bennett (ISB #7735)
adbennett@hollandhart.com
Julie A. Hamilton (ISB #11708)
jahamilton@hollandhart.com
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
Boise, ID 83702-7714
Telephone:  (208) 342-5000
Facsimile:  (208) 343-8869

Jonathan K. Youngwood (*Admitted Pro Hac Vice*)
jyoungwood@stblaw.com
Meredith Karp (*Admitted Pro Hac Vice*)
meredith.karp@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone:  (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PAYSERVICES BANK,<br><br>               Plaintiff,<br><br>vs.<br><br>FEDERAL RESERVE BANK OF<br>SAN FRANCISCO,<br><br>               Defendant. | Case No. 1:23-cv-00305-REP<br><br>**DECLARATION OF MEREDITH KARP IN SUPPORT OF DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

DECLARATION OF MEREDITH KARP IN SUPPORT OF DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

SER-034

I, Meredith Karp, declare as follows:

1.      I am one of the attorneys for Defendant Federal Reserve Bank of Francisco, am over 18 years of age, am competent to make this declaration, and make this declaration based upon my personal knowledge.

2.      Attached to this Declaration as Exhibit A is a true and correct copy of the Federal Reserve Bank of San Francisco's May 31, 2023 Letter to PayServices, Inc. that is identified in Paragraph 43 of the Complaint.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2023.

       /s/ Meredith Karp
        Meredith Karp

DECLARATION OF MEREDITH KARP IN SUPPORT OF DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Asa Daniel Brown
asa@asabrownlaw.com

Jade A. Craig
jade@jadeacraigpa.com

                             /s/ Robert A. Faucher
                             Robert A. Faucher
                             of HOLLAND & HART LLP

30317058_v1

DECLARATION OF MEREDITH KARP IN SUPPORT OF DEFENDANT FEDERAL RESERVE BANK OF SAN FRANCISCO'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF - 2

# EXHIBIT A

**Federal Reserve Bank of San Francisco**

May 31, 2023

Lionel Danenberg
PayServices, Inc.
14061 Pacific Point Place, #204
Delray Beach, FL 33484

Dear Mr. Danenberg,

The Federal Reserve Bank of San Francisco (FRBSF) has reviewed the request by PayServices Bank to obtain a Federal Reserve Master Account and financial services.  FRBSF is unable to grant your request because the request does not meet the standards outlined in the Board of Governors' Guidelines for Evaluating Account and Service Requests (Guidelines). PayServices has obtained "preliminary approval" from the Idaho Department of Finance to establish an uninsured Idaho state-chartered bank and would not be subject to prudential supervision by a federal banking agency.  PayServices intends to operate exclusively as an online bank and to focus its business model almost entirely on providing payment processing solutions to foreign import and export merchants and buyers, and foreign governments. Under the Guidelines, PayServices is a Tier 3 institution and thus subject to the strictest level of review.  The proposed novel, monoline business model and focus on transactions that are largely foreign in nature or involve mostly foreign participants presents undue risks.

PayServices Bank's unproven risk management framework is considered insufficient to address the heightened risks associated with its novel, monoline business model, including its ability to mitigate money laundering and terrorism financing risks.  Most notably, the significant risks and concerns in the areas of BSA/AML and OFAC risk management, credit and settlement process and controls, cyber and information security risk management, enterprise risk management, strategic planning, and the limited banking and bank-specific risk management experience among management, presents undue risk to the Reserve Bank. The proposal also presents potential concerns with respect to PayServices' ability to be resolved safely and effectively upon failure, due to its uninsured status.  Should the institution

INTERNAL FR/OFFICIAL USE // SECURE EXTERNAL



allow the Master Account to fund or facilitate illicit activity, undue reputational risk may also be posed to the Reserve Bank, Payment and/or U.S. financial system.

Please let us know if you have any questions.

Regards,

Wallace Young, Vice President, Credit Risk Management

SER-039

Asa Daniel Brown
asa@asabrownlaw.com
Idaho State Bar No. 11990
THE LAW OFFICES OF ASA D. BROWN, PLLC
315 N. Monroe Street
Moscow, ID 83843
Telephone: 904-477-7900
Attorney for PayServices Bank

Jade A. Craig (*Admitted Pro Hac Vice*)
jade@jadeacraigpa.com
JADE A. CRAIG, PA
1313 NE 3rd Street
Fort Lauderdale, FL 33301
Telephone: (813) 459-1309
Attorney for PayServices Bank

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **PAYSERVICES BANK,** | **Case No. 1:23-cv-00305-REP** |
| Plaintiff, | |
| **v.** | **RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Dkt. 22)** |
| **FEDERAL RESERVE BANK OF SAN FRANCISCO,** | |
| Defendant. | |

Plaintiff, PAYSERVICES BANK ("PAYSERVICES"), by and through its attorneys of record, submits this response in opposition to Defendant Federal Reserve Bank of San Francisco's ("FRBSF" or the "Reserve Bank") Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief and states the following:

## BACKGROUND

PayServices Bank is a private banking corporation incorporated under the Idaho Bank Act. Complaint ("Compl."), ¶ 1. On August 3, 2022, the Idaho Department of Finance granted

PayServices Bank a provisional charter, approving its application to establish a state-chartered bank. Compl., ¶ 2. PayServices is subject to regulation by the Idaho Department of Finance and under Idaho law. PayServices' business model focuses on providing payment processing solutions for merchants and commercial buyers in international transactions, along with a host of other services. *See* Declaration of Lionel Danenberg (Danenberg Decl.,), attached hereto as Exhibit A, ¶¶ 6-8. The business model is unique in that the bank does not issue loans or credit of any kind. Thus, its risks do not grow out of maintaining or leveraging debt, or the collection of debt. Danenberg Decl., ¶¶ 9-10. Its preliminary approval for a charter requires that it maintains a cash reserve of 100 percent of its total deposits. *Id.*, ¶ 11.

This type of institution offers a form of "safe banking."[1] As a result, it does not fit within the type of entity typically regulated by a federal banking agency.[2] For example, while many state-chartered banks are members of the Federal Deposit Insurance Corporation ("FDIC") and are regulated by the FDIC, the FDIC provides deposit insurance to protect depositors from losses based on a bank overleveraging debt.[3] In fact, the core factors in the FDIC's risk evaluation process

---

[1] The model within which a bank holds 100 percent of its deposits in reserve and that it is prohibited from lending deposits has been referred to as "Pure Reserve Banking." *See* Adam J. Levitin*, Safe Banking: Finance and Democracy*, 83 U. Chi. L. Rev. 357, 417-19 (2016)

[2] *See, e.g.*, Adam J. Levitin, *Safe Banking: Finance and Democracy*, 83 U. Chi. L. Rev. 357, 418 (2016). Levitin, a professor at Georgetown University's law school in Washington, D.C., argues that "100% reserve banking renders most of the prudential bank regulatory apparatus as well as federal deposit insurance and the Federal Reserve System *entirely superfluous and unnecessary*." *Id.* at 418 (emphasis added). "Pure Reserve Banking presents the possibility of a rationally designed system that produces greater financial stability with less regulation and without the dangers of regulatory arbitrage." *Id.* at 419. Yet the FRBSF's refusal to issue a master account has been to create more roadblocks and to "increase the complexity of regulation." *Id.* at 418.

[3] The FDIC focuses heavily on "lending and its related risks" and "trends in credit risks." *A Brief History of Deposit Insurance in the United States*, FDIC (Sept. 1998), p. 53, https://www.fdic.gov/bank/historical/brief/brhist.pdf. The FDIC's current risk management manual emphasizes that debt is the greatest threat to a bank's stability and security. "Loans typically comprise a majority of a bank's assets and carry the greatest amount of risk to their

for determining the insurance premiums institutions[4] may be required to pay involve leveraged deposits put at risk by products and services that PayServices' proposed bank explicitly does not offer. This consideration is one of the reasons that, at the very outset of the application process, a representative of the FDIC who participated in an April 2022 call with PayServices and officials from the FRBSF about PayServices' application for a master account noted that PayServices' business model did not merit the issuance of FDIC insurance. Compl., ¶¶ 16-17.

PayServices applied to the Federal Reserve Bank of San Francisco for a master account which is "put simply, a bank account for banks" that "gives deposit institutions access to the Federal Reserve System's services, including its electronic payments system." *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052, 1053 (10th Cir. 2017) (Moritz, J.). "Without such access, a depository institution is nothing more than a vault." *Id*. at 1053 (Moritz, J.) (internal quotation marks omitted). "A master account also enables its holder to access various services promised by 12 U.S.C. § 248a beyond deposit and withdrawal services, including wire transfer services, automated clearinghouse services, settlement services, securities safekeeping, and Federal Reserve float services." *Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, No. 22-CV-125-SWS, 2022 WL 16901942, at *2 (D. Wyo. Nov. 11, 2022).

Law professor Julie Hill explains: "Following the Monetary Control Act of 1980, banks opening an account at the Federal Reserve encountered a process like that of customers opening standard bank accounts[.]"[5] "Federal Reserve Banks opened accounts with little independent

---

capital." *See, e.g.*, FDIC, Risk Management Manual of Examination Policies, § 3.1-2, https://www.fdic.gov/regulations/safety/manual/section2-1.pdf (Apr. 2015).
[4] *See* 12 C.F.R. § 327.9(a)(1).
[5] Julie Andersen Hill, *Opening A Federal Reserve Account*, 40 Yale J. on Reg. 453, 455 (2023) (footnotes omitted).

investigation as to the riskiness of the applicant. For many years, the Federal Reserve Banks' forms implied that account opening was quick, noting that '[p]rocessing may take 5-7 business days.'"[6]

In or around 2013, however, Reserve Banks started to change their approach to processing account requests.[7] The process has also become increasingly secretive. The Reserve Banks claim that they are not subject to the Freedom of Information Act ("FOIA"), despite authority that suggests otherwise.[8] Hill's research indicates that the restricted access to master accounts generally targets novel banks, such as non-lending banks like PayServices.[9]

In PayServices' case, the application materials provided that review would take up to 30 days for an eligible depository institution to receive approval to open an account. It is undisputed that PayServices is an eligible depository institution which is authorized to open a master account with the Federal Reserve. *See* Compl., ¶ 4. The FRBSF engaged in multiple conversations with officers of PayServices prior to PayServices filing an application and during the application process. Compl., ¶¶ 16-20, 23-26. During this process, PayServices responded timely to requests for additional information. Compl., ¶ 24. FRBSF officials did not indicate that there were any reasons why it would not be eligible for an account. Compl., ¶¶ 34-35, 37, 39.

---

[6] Hill, *supra* note 5, at 456.

[7] *Id*.

[8] *See, e.g.*, Freedom of Information Requests, Fed. Rsrv. Bank of N.Y., https://www.newyorkfed.org/aboutthefed/freedom-of-information-requests (stating that although the "[t]he Federal Reserve Bank of New York is not an agency as defined by the Freedom of Information Act (FOIA) and is therefore not subject to the provisions of FOIA," it nevertheless "is committed to complying with the spirit of FOIA"); *cf.* Karla Karlson, Comment, *Check and Balances: Using the Freedom of Information Act to Evaluate the Federal Reserve Banks*, 60 Am. U. L. Rev. 213 (2010) (describing how FOIA may be interpreted to apply to Reserve Banks).

[9] *See* Hill, supra note 5, at 476-81 (examining the experience of The Narrow Bank, a Connecticut-based non-lending bank whose master account application to the Federal Reserve Bank of New York was left under consideration for five years).

FRBSF took more than nine months to complete a review process that its application materials indicate will take up to 30 days. *See* Compl., ¶ 37. Defendant responded with a one-page letter that does not cite any of PayServices' application materials or responses to requests for additional information to justify the decision to deny PayServices an account. *See* Dkt. 22-2. The reason given in the Motion to Dismiss – the "risk of illicit financial activity, including terrorism funding" are a post-hoc justification for a decision that was made arbitrarily, capriciously, and with the intent to block PayServices from operating its lawful business as a state-chartered banking institution. PayServices meets and exceeds the requirements for the issuance of a master account, and FRSBF's denial of the same is contrary to law.

<u>LEGAL STANDARD</u>

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The allegations must also be construed in the light most favorable to plaintiff. *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 704 (9th Cir. 2016). In resolving the motion, the court does not weigh evidence, evaluate witness credibility, or consider the likelihood that a plaintiff will prevail at trial. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 907 (S.D. Cal. 2020) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although the court generally cannot consider facts outside the complaint in ruling on a Rule 12(b)(6) motion to dismiss, *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001), it may consider documents that are referenced in the complaint, *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

ARGUMENT

I.      **FRBSF lacked the discretion to deny PayServices' request for a master account.**

Defendant argues that Congress passed the Monetary Control Act of 1980, Pub. L. No. 96-221, 94 Stat. 132 (1980) to "give Reserve Banks the option to offer services and accounts to eligible nonmember depository institutions." Dkt. 22-1, p. 4. Defendant also contends that "[o]riginally, deposit accounts with Reserve Banks were limited to the U.S. government and Federal Reserve 'member' banks" and that, even after the passage of the Monetary Control Act, the Reserve Banks only have the "option" to give access to the U.S. payment system to non-member banks if the Reserve Bank so chooses. *Id.*, p. 4. This rendition of the history of the Federal Reserve Act and description of the structure of the Federal Reserve System is inconsistent with the actual legislative history and structure of the underlying statutes.

Until 1980, Federal Reserve accounts "were for the most part . . . available only to banks that were members of the Federal Reserve System."[10] In 1980, Congress passed the Monetary Control Act to open up access to the U.S. payment system – not to increase Reserve Banks' power to keep eligible institutions out.[11] According to the FRBSF, 12 U.S.C. § 342 provides Reserve Banks with discretion to deny master accounts. Dkt. 22, pp. 14-15. In *Custodia Bank v. Federal Reserve Board of Governors*, No. 22-CV-125-SWS, 2022 WL 16901942 (D. Wyo. Nov. 11, 2022), an applicant for a master account challenged the Federal Reserve Bank of Kansas City's denial of the application. The federal district court in Wyoming has considered and rejected the same argument FRBSF attempts to advance here. As the court in *Custodia Bank* observed, Judge Robert

---

[10] Fed. Res. Sys., *The Fed Explained: What The Central Bank Does* 87 (11th ed. 2021), https://www.federalreserve.gov/aboutthefed/files/the-fed-explained.pdf.
[11] Hill, *supra* note 5, at 455 (noting the MCA "[gave] all depository institutions access to Federal Reserve accounts.").

Page **6** of 22

Bachrach on the U.S. Court of Appeals for the Tenth Circuit also disagreed in a published opinion – the only decision by an appeals court that has ruled on this issue. *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kansas City*, 861 F.3d 1052 (10th Cir. 2017).

As an initial matter, it must be noted that Section 342 does not address master account access.  Section 342 states that Reserve Banks "may receive from any of its member banks, or other depository institutions, and from the United States, deposits of current funds in lawful money, national-bank notes, Federal reserve notes, or checks, and drafts, payable upon presentation or other items."  Section 342 thus presupposes that various entities *already* have master accounts, which are prerequisites to receive deposits.  Section 342 merely describes "types of monetary instruments that Federal Reserve Banks may receive for deposit or collection" from entities possessing master accounts.  *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1074 (10th Cir. 2017) (Bacharach, J.).  Section 342 does not prescribe conditions for obtaining master accounts.

Defendants incorrectly rely on *Farmers' & Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond*, 262 U.S. 649 (1923), as evidence that 12 U.S.C. § 342 gives Reserve Banks discretion to deny master accounts. Dkt. 22-1, p. 8. *Farmers* reinforces that Section 342 confers some discretion over what types of monetary instruments Reserve Banks may accept - not discretion over the question of whether to grant master accounts in the first place.  *Farmers* held that "neither section 13, nor any other provision of the Federal Reserve Act, imposes upon reserve banks any obligation *to receive checks for collection*.  The act merely confers authority to do so." 262 U.S. at 655, 662 (emphasis added).  The fact that Reserve Banks need not accept every method of deposit is irrelevant to whether they have discretion to deny master account applications.  *See Fourth Corner*, 861 F.3d at 1074 (Bacharach, J.) (rejecting Defendants' interpretation).

Defendants suggest that Section 248a is a "price discrimination provision" that has no relevance to Plaintiff's entitlement to a master account. Dkt. 22-1, p. 2. To the contrary, in *Fourth Corner*, Judge Bachrach determined that 12 U.S.C. § 248a requires Federal Reserve Banks to issue master accounts to eligible depository institutions that apply for them. That section (part of the Depository Institutions Deregulation and Monetary Control Act of 1980) requires that all Federal Reserve Bank services covered by a pricing fee schedule which Congress directed the Federal Reserve System Board of Governors to adopt "shall be available to nonmember depository institutions" on the same terms as are offered to nonmember banks with certain exceptions. 12 U.S.C. § 248a(c)(2). Judge Bacharach reasoned that the only way the "Federal Reserve bank services covered by the fee schedule" can be made available to nonmember depository institutions is by granting them a master account. *See Fourth Corner*, 861 F.3d at 1071 (Bacharach, J.) ("The plain text of § 248a(c)(2) indicates that nonmember depository institutions are entitled to purchase services from Federal Reserve Banks. To purchase these services, a master account is required. Thus, nonmember depository institutions, such as Fourth Corner, are entitled to master accounts."). Judge Bachrach distinguished between Sections 342 and 248a, the statutes at issue here:

> Section 342 addresses the types of monetary instruments that Federal Reserve Banks may receive for deposit or collection…. But § 342 does not address which institutions can access Federal Reserve services; that subject is governed instead by § 248a(c)(2), which establishes open access to Federal Reserve services for all nonmember depository institutions. As a result, § 342 does not affect Fourth Corner's entitlement to a master account.

*Fourth Corner*, 861 F.3d at 1074. "That is, he agreed § 342 affords to a Federal Reserve Bank the discretion to take or refuse deposits, but concluded such discretion was separate and apart from the issuance of master accounts." *Custodia Bank*, 2022 WL 16901942, at *6 (citing *Fourth Corner*); *see also Fourth Corner*, 861 F.3d at 1073-74 (noting that "this discretion does not encompass the issuance of master accounts."). Based on this authority, this Court should reject

Defendant's contention that it has the absolute discretion to deny master account applications as a basis to dismiss Plaintiff's complaint.

Contrary to Defendant's contention in the Motion to Dismiss, PayServices has not argued that FRBSF should have "rubber-stamped" the request. Dkt. 22-1, p. 1. PayServices argues and the law establishes that Reserve Banks like FRBSF have an obligation to determine whether the entity seeking an application meets the eligibility requirements to operate a financial institution. Once it determines that the entity is eligible, it has an obligation to allow the entity to open an account. The bank's activity with the account is subject to the regulation of a network of other state and federal agencies which monitors and controls risks to the U.S. payment system. But the Reserve Bank does not have the authority to deny access to an account on this basis.

## II.    FRBSF's denial of PayServices' application for a master account is subject to judicial review under the APA.

### A.    FRBSF is subject to the Administrative Procedure Act ("APA") as an instrumentality of the federal government.

FRBSF argues that Reserve Banks are not "agencies" under the APA. Dkt. 22-1, pp. 21-22. The consequences of that position would be astonishing. An entity that exercises many binding regulatory powers—including, as FRBSF asserts, the final authority over decisions affecting the U.S. financial system—would operate free of accountability. Defendants' interpretation of the APA is incorrect and unprecedented. The APA defines an agency, with certain exceptions not applicable here, as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency." 5 U.S.C. § 551(1); 5 U.S.C. 701(b)(1). Admittedly, "the law is currently unsettled on whether a Federal Reserve Bank is an 'agency' for APA purposes." *Custodia Bank*, 2022 WL 16901942, at *3.

Courts look to "the structure, function, and mandate of the entity." *New York v. Atl. States Marine Fisheries Comm'n*, 609 F.3d 524, 531 (2d Cir. 2010) (internal quotation marks omitted). Particularly key is whether the entity exercises "substantial independent authority" to "take final and binding action affecting the rights and obligations of individuals." *Dong v. Smithsonian Inst.*, 125 F.3d 877, 881-82 (D.C. Cir. 1997) (internal alterations omitted); *accord Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971); *Elec. Priv. Info. Ctr. v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 109-11 (D.D.C. 2020).

Reserve Banks qualify as APA agencies because they wield significant, independent federal regulatory powers. Congress tasked Reserve Banks with implementing federal monetary policy and empowered the Board to "delegate … *subject to the [APA]*, any of its functions, other than those relating to rulemaking or pertaining principally to monetary and credit policies, to . . . Federal Reserve banks." 12 U.S.C. § 248(k). The Board, in turn, has delegated to Reserve Banks the power to adjudicate Federal Reserve membership applications and other requests and petitions. *See* 12 C.F.R. § 265.20.

Multiple courts that have considered the question have deemed Reserve Banks agencies for APA purposes; no case holds otherwise. *See Flight Int'l Grp., Inc. v. Fed. Rsrv. Bank of Chi.*, 583 F. Supp. 674 (N.D. Ga. 1984), *vacated on other grounds*, 597 F. Supp. 462 (N.D. Ga. 1984); *Lee Constr. Co. v. Fed. Rsrv. Bank of Richmond*, 558 F. Supp. 165 (D. Md. 1982); *Jet Courier Servs., Inc. v. Fed. Rsrv. Bank of Atlanta*, 713 F.2d 1221, 1228 and n.1 (6th Cir. 1983). The cases rejecting the Reserve Banks' status as "agencies" involved definitions that differ from the APA and did not involve assertions of Reserve Banks' putative final decision-making authority.[12]

---

[12] *See Bozeman Fin. LLC v. Fed. Rsrv. Bank of Atlanta*, 955 F.3d 971, 976 (Fed. Cir. 2020) (Reserve Banks are "distinct from the government" under America Invents Act, not other statutes); *United States v. Wells Fargo & Co.*, 943 F.3d 588, 597-98 (2d Cir. 2019) (False Claims Act); *Scott*

Indeed, the reasoning in *Lee Construction* is particularly applicable here. The district court explained: "[D]espite the ostensibly private ownership of Federal Reserve Banks and despite the private election of six of the nine members of the board of directors of each Bank, the affairs of each Federal Reserve Bank are conducted under the close supervision and ultimate control of the Board, an independent federal regulatory agency." *Lee Const. Co.*, 558 F. Supp. at 177. Among various provisions that demonstrate the Federal Reserve System Board of Governors' oversight of the Reserve Banks, it refers to the authority "[t]o exercise general supervision over [the] Federal reserve banks" at 12 U.S.C. § 248(j). *Id*. In August 2022, the Board issued *Guidelines Covering Access to Accounts and Services at Federal Reserve Banks (Account Access Guidelines) ("Guidelines")*, citing its general supervisory authority under Section 248(j). *Guidelines*, 87 Fed. Reg. 51099, 51106 (Aug. 19, 2022).

The Board has extensively delegated its functions and its authority to the Federal Reserve Banks. *Lee Construction*, 558 F. Supp. at 177 (citing 12 C.F.R. §§ 265.2(f)(1)–(48) (1981); 12 U.S.C. § 248(k)). "Thus, Federal Reserve Banks seemingly possess substantial independent authority in the exercise of specific functions, and seemingly have authority in law to make decisions. . . . [T]he Federal Reserve Banks would appear to be vested with substantial powers to act with respect to individuals and to function as a discrete, decision-producing layer," despite the

---

*v. Fed. Rsrv. Bank of Kan. City*, 406 F.3d 532, 534 (8th Cir. 2005) (28 U.S.C. § 451 definition); *Fed. Rsrv. Bank of St. Louis v. Metrocentre Imp. Dist. No. 1*, 657 F.2d 183, 186 (8th Cir. 1981) (not addressing Reserve Banks' agency status), *aff'd*, 455 U.S. 955 (1982); *Katsiavelos v. Fed. Rsrv. Bank of Chi.*, 859 F. Supp. 1183, 1185 (N.D. Ill. 1994) ("Plaintiff does not contend that the FRBC is an executive agency as that term is used in Title VII."); *In re Hoag Ranches*, 846 F.2d 1225, 1227 (9th Cir. 1988) (Fed. R. App. P. 4(a)(1)); *Lewis v. United States*, 680 F.2d 1239, 1240 (9th Cir. 1982) ("critical factor" for Federal Tort Claims Act "is the existence of federal government control over the detailed physical performance and day to day operation of that entity" (internal quotation marks omitted)); *McKinley v. Bd. of Govs. of Fed. Rsrv. Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) (not addressing Reserve Banks' agency status because "[t]he Board concedes that the Federal Reserve Banks … are not federal agencies" and did not invoke FOIA protections).

Board's power to review their actions. *Id.* at 178 (internal citations and quotation marks omitted). Based on these facts, which remain true for FRBSF, the court concluded that "since the language of the APA itself provides that an 'agency' is 'each authority of the Government of the United States, whether or not it is within or subject to review by another agency,' a Federal Reserve Bank may be considered such an 'agency' even though its actions may be subject to review by the Board." *Id.*

In this specific case, the Board admits that it delegated the authority to grant PayServices' request for a master account to the FRBSF. In a letter dated June 15, 2023, Jennifer Gallagher, who identifies herself as an "Assistant to the Board" of Governors of the Federal Reserve System, sent a letter to U.S. Senator Marco Rubio's office in response to Sen. Rubio's request for information regarding the status of PayServices Bank's application for a master account. Ms. Gallagher states that "*the Reserve Bank determined* that it is unable to grant PayServices' Bank's request for a master account and financial services . . . ."[13] Danenberg Decl., ¶ 29 & Ex. A to Decl. (emphasis added). This delegation of authority makes FRBSF subject to APA review.

**B.** *This Court may exercise its mandamus authority to compel the granting of PayServices' request for a master account.*

A writ of mandamus compelling action from the Defendants arises under 28 U.S.C. § 1361, which provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "Mandamus is the traditional writ designed to compel government officers to perform nondiscretionary duties." *See Custodia Bank*, 2022 WL 16901942, at *8 (citing

---

[13] Of course, the Board is not currently a party to this action. If discovery at a later date indicates that the Board actually intervened, the Board's conduct would be inconsistent with the Board's representations to Sen. Rubio's office in which the Board alleges that it had no role in reviewing PayServices Bank's application and the decision was entirely that of FRBSF.

*Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1234 (10th Cir. 2005)). To obtain mandamus relief, the plaintiff must show that "(1) [its] claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt; and (3) no other adequate remedy is available." *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).

In this case, Defendant has "failed to discharge a duty owed to plaintiffs which Congress has directed them to perform." *Custodia Bank*, 2022 WL 16901942, at *8 (citing *Carpet, Linoleum & Resilient Tile Layers, etc. v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981)). The issuance of master accounts to eligible depository institutions is a nondiscretionary duty under Section 248a.

"For relief pursuant to Section 1331 and the APA, plaintiffs must show unreasonable delay in the processing of their applications." *Singh v. Still*, 470 F. Supp. 2d 1064, 1067–68 (N.D. Cal. 2007); 5 U.S.C. § 555(b) ("[W]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."); *see also id.* 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed"). Under the reasonable time standard, the Court has discretion to determine whether the agency's delay is unreasonable. *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 506-07 (9th Cir. 1997)

In this case, FRBSF took more than nine months to complete an application process that has historically taken 5-7 business days.[14] PayServices alleges that, at an April 2022, at the beginning of the application process, FRBSF officials concluded that the company's business model involved minimal risk because the "likelihood of a bank failure at PayServices is not possible" because keeps all customer deposits in reserve. Compl., ¶ 18. David Xu, representing the FRBSF concluded that "PayServices' business model is no different than an ATM card . . . and

---

[14] *See* Hill, *supra* note 5, at 456 (footnotes omitted) & Response, *infra*, p. 4.

for this reason, the only requirement – from an operational risk assessment – for the FRBSF" was that overdrafts would not be permitted, which PayServices does not allow under its operating procedures. Compl., ¶ 19. Wallace Young, the most senior official representing the FRBSF on the review of the application, concluded that "PayServices will be eligible to apply to request approval of a Master Account for PayServices to be connected to the U.S. payment system and that the FRBSF would be in a position to approve the request for a Master Account based on the business plan and business model that PayServices presented." Compl., ¶ 20. After obtaining a preliminary approval for a charter from Idaho, PayServices formally submitted its master account application based on the April 2022 meeting. Compl., ¶¶ 20-23. From August 10, 2022 through May 31, 2023, the better part of a year, PayServices repeatedly inquired about the status of its application and was told that the "review continues" and that FRBSF is "not sharing our process with you." *Id*., ¶ 26. FRBSF never identified and informed PayServices about any aspect of PayServices' compliance and risk management framework that required improvement. *Id.*, ¶ 36. PayServices asked multiple times and in multiple ways if any changes were required to the application to obtain approval; FRBSF said no. *See id.*, ¶ 39.

On May 17, 2023, PayServices contacted the office of U.S. Senator Marco Rubio for assistance in obtaining information regarding the excessive delay in processing the application. *Id.*, ¶ 40. Sen. Rubio's office contacted FRBSF the next day, asking FRBSF to take action on the application. That same day, Wallace Young finally sent an email claiming that FRBSF was "wrapping everything up" and provided a timeframe for completion – within two weeks. *Id.*, ¶ 42. On May 31, 2023, FRBSF issued a one-page denial letter. *Id.*, ¶ 43. FRBSF concluded the application review that it could have completed much sooner only after the office of a U.S. senator intervened and placed a spotlight on their failure to timely complete the review. Taken together,

the allegations establish a plausible cause of action for unreasonable delay against Defendant. Mandamus relief is available to remedy these failures.

### III.    FRBSF's decision was arbitrary and capricious.

Defendant argues that PayServices "has not pled facts showing that FRBSF's decision was arbitrary or capricious." Dkt. 22-1, p. 18. The APA allows courts to set aside agency actions that are "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018). "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1067 (9th Cir. 2018). The Ninth Circuit has ruled that, "[e]ven when an agency is acting within its area of expertise," courts "need not defer to the agency when the agency's decision is without substantial basis in fact." *Id.*

FRBSF argues that the Guidelines are the "only possibly relevant standard by which to judge FRBSF's discretion." *Id.* FRBSF's denial letter claims that it denied PayServices Bank's application because its business model was "monoline" and it "focus[es] on transactions that are largely foreign in nature or involve mostly foreign participants presents undue risks." Dkt. 22-2, Exhibit A. Even the Guidelines promulgated by the Federal Reserve, however, do not prohibit the issuance of master accounts to banks with specific business models. Additionally, PayServices Bank is not "monoline" because it provides a variety of different payment processing solutions to merchants, commercial buyers, and sovereign governments. *See* Danenberg Decl., ¶ 8. It manages compliance with foreign asset control laws and customs

requirements with end-to-end traceability. *Id.*, ¶ 7. It also provides individual accounts to members of the public interested in becoming depositors and processes payments for goods and services, like any other traditional bank. *Id.*, ¶ 10.

Defendant argues that PayServices has an "unproven risk management framework." Dkt. 22-1, p. 6; Dkt. 22-2, Ex. A. PayServices provided its Compliance Management System (CMS) Manual, Cybersecurity Manual, Business Plan, and other documents detailing its compliance with the federal Bank Secrecy Act and cybersecurity standards. Danenberg Decl., ¶ 15. PayServices' risk management framework relies on best practices and principles adopted by the Federal Financial Institutions Examination Council ("FFIEC"), NIST cybersecurity standards, and other leading industry standards upon which federal bank examiners rely to evaluate risk management protocols of the banks they regulate. *Id.*, ¶ 16. The CMS Manual, Business Plan and Cybersecurity Manual include copious and detailed endnotes citing the authorities upon which PayServices relied in developing its policies and procedures. *Id.*, ¶ 17. In fact, a Certified Anti-Money Laundering Specialist and a Certified Fraud Examiner with the Association of Certified Fraud Examiners completed an assessment of the CMS Manual.[15] *Id.*, ¶ 18. The examiner certified the program's compliance with federal law. *Id.* The framework is not "unproven" because it relies on multiple federally approved risk management protocols which are the gold standard for institutions currently in operation. The basis for Defendant's position is that PayServices' systems are

---

[15] Federal bank regulators have recognized the merits of the credentials issued by both of these credentialing bodies. Indeed, the FFIEC Examiner Education Program validates the merits of its own training by noting that ACAMS and ACFE have approved their courses. *See* FFIEC Examiner Education Course Catalogue (2021), https://www.ffiec.gov/exam/ffiec2021.pdf. The FFIEC assures potential students: "Several of the FFIEC courses are assessed and approved annually for continuing education credits. In 2019, the Association of Certified Anti-Money Laundering Specialists (ACAMS) reviewed the course content and determined that attendees of the Advanced BSA/AML Specialists Conference can earn up to 14 Certified Anti-Money Laundering Specialists (CAMS) credits toward maintaining their certification." *Id.*, p. v.

"unproven" because PayServices has not operated its bank where its systems are put into action. The reasoning is circular, however, because PayServices cannot operate its bank and put its framework to use unless the FRBSF grants it access to the U.S. payment system with a master account.

Defendant also claims the risk management framework is "insufficient 'to mitigate money laundering and terrorism financing risks.'" Dkt. 22-1, p. 6; Dkt. 22-2, Ex. A. PayServices' CMS and Cybersecurity Manuals provide a detailed set of policies for addressing money laundering and terrorism financing risks. They describe the company's use of cutting edge technology, including technology that tags a user's location and personal data and links it with the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) sanctions list; the use of a proprietary secure browser that it has developed which limits account access; and the use of technology that examines the specific characteristics of a user's device to be sure that the device used to access accounts and handle transactions is the same as the device(s) authenticated to access the account, among other features. Danenberg Decl., ¶ 19.

Defendant further claims that PayServices has not accounted for the possibility that the master account could be used to "fund or facilitate illicit activity." Dkt. 22-1, p. 6; Dkt. 22-2, Ex. A. The Business Plan specifically explains that what makes PayServices unique is that each transaction between a merchant and a commercial buyer includes the use of a secure portal which holds the underlying documents to facilitate a transaction, including but not limited to the contract of sale, invoices, and any insurance taken for the transaction. Danenberg Decl., ¶ 20. PayServices literally oversees the transaction and controls the release of funds based on both parties' approval that the underlying goods have been submitted, received, and conform to the terms of their

agreement. It also restricts transactions on goods that are subject to customs bans imposed by the relevant countries – a feature to eliminate the trade in "illicit" goods. Danenberg Decl., ¶ 21.

Defendant claims that PayServices has limited "banking and bank-specific risk management experience among management[.]" Dkt. 22-1, p. 6; Dkt. 22-2, Ex. A. PayServices' proposed directors include a former director at the World Bank and a former officer of one of the country's fifteen largest banks prior to its merger with HSBC Bank, among other experts. Danenberg Decl., ¶ 25-26.

Finally, the FRBSF and other Federal Reserve Banks have granted master accounts to credit unions that have very similar circumstances to PayServices. Credit unions also have limited lines of business in that they only agree to serve a certain community with limited services.[16] The FRBSF has given master accounts to credit unions that are also not subject to the authority of a federal regulator. They are purely state chartered institutions. In June 2023, the Board published a list of firms that have access to master accounts, after significant pressure from Congress.[17] Some of the entities that have master accounts despite their similarity to PayServices include:

> **American Samoa:** Territorial Bank of American Samoa; **California:** Fresno Police Department Credit Union, CAHP Credit Union, Glendale Area Schools Credit Union; **Colorado:** Boulder Dam Credit Union; **Idaho:** Northwest Christian Credit Union, Members Preferred Credit Union, Latah Credit Union; **Nevada:** Clark County Credit Union, Financial Horizons Credit Union; and **Tennessee:** UPS Credit Union

---

[16] *See* 12 U.S.C. § 1759(b)(1)-(3) (subject to certain exceptions, "the membership of any Federal credit union shall be limited to the membership described in" certain categories, including "single common-bond credit union," "multiple common-bond credit union," and "community credit union" meaning "persons or organizations within a well-defined local community, neighborhood, or rural district").

[17] *See* Kyle Campbell, *Fed launches master account database*, Am. Banker (June 16, 2023, 3:23 p.m. EDT), https://www.americanbanker.com/news/fed-launches-master-account-database; Fed. Rsrv. Sys., *Master Account and Services Database – Database: Existing Access*, https://www.federalreserve.gov/paymentsystems/master-account-and-services-database-existing-access.htm (current as of May 31, 2023) (search names).

These credit unions are also self-insured or insured by a private third-party entity. Danenberg Decl., ¶ 27. PayServices' provisional charter provides it must maintain 100% of its deposits in its reserves, which is a form of self-insurance.

Other institutions that are not credit unions, but likewise are either state-chartered banks, uninsured, or not subject to a federal regulator, or some combination thereof include; Farm Credit Bank of Texas, which also deals with exports and imports like PayServices; Black Rock Institutional Trust Co, NA – California; and Banco do Brazil – Miami, Florida

FRBSF's denial letter, which it submitted itself into the record (Dkt. 22-2, Ex. A), does not address the facts provided herein and alleged in the Complaint which do not support its reasoning for denying PayServices' application for a master account. "[A]gency rulings are arbitrary and capricious if the agency offers 'an explanation for its decision that runs counter to the evidence before the agency.'" *Ctr. for Biological Diversity v. Zinke*, 900 F.3d 1053, 1071 (9th Cir. 2018) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Greater Yellowstone Coal., Inc. v. Servheen*, 665 F.3d 1015, 1028 (9th Cir. 2011). Thus, PayServices has stated a plausible claim for arbitrary and capricious review under the APA.

**IV.    FRBSF denied PayServices procedural due process in PayServices' application for a master account.**

FRBSF has violated PayServices' right to procedural and substantive due process under the Fifth Amendment to the U.S. Constitution. To prevail on either a procedural or substantive due process claim, a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property interest. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022); *Olson v. California*, 62 F.4th 1206, 1220 (9th Cir. 2023). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral

expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Blantz v. Calif. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 922 (9th Cir. 2013) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972)).  Given that Section 248a requires the issuance of master accounts to eligible depository institutions, PayServices has a legitimate property interest in a master account. *See Custodia Bank, Inc. v. Fed. Rsrv. Bd. of Governors*, No. 22-CV-125-SWS, 2022 WL 16901942, at *9 (D. Wyo. Nov. 11, 2022).

Furthermore, FRBSF has denied PayServices procedural due process. FRBSF's denial letter, which it attaches to the Motion to Dismiss in its declaration, does not indicate any means by which PayServices could seek administrative review or an appeal of the decision. It does not describe specific information that PayServices can provide that would show it complies with the Guidelines that FRBSF claims it followed in making the decision. It grants no opportunity to correct the record and still protect its right to an account as an eligible depository institution. Accordingly, PayServices has stated a claim for violation of its procedural and substantive due process rights.

## **CONCLUSION**

Plaintiff PayServices Bank respectfully requests that the Court DENY Defendant Federal Reserve Bank of San Francisco's Motion to Dismiss Plaintiff's Complaint for Declaratory and Injunctive Relief and grant any other relief it deems just and proper.[18]

---

[18] PayServices recognizes that the litigation involving Custodia Bank alleges that the Federal Reserve System Board of Governors may be taking an active role in the denial of master account applications. PayServices intends to seek discovery to determine if such interference took place with respect to its application should the Court deny the motion to dismiss. PayServices requests that any granting of the motion, however, be without prejudice to permit the filing of a complaint against Defendant should it later discover additional facts not currently known in discovery in any future action against the Board, if such action is ever filed.

DATED this 31st day of August, 2023

Respectfully submitted,

JADE A. CRAIG, P.A.

By: /s/ Jade A. Craig
Jade A. Craig (*Admitted Pro Hac Vice*)


*and*

LAW OFFICES OF ASA D. BROWN, PLLC

By: /s/ Asa D. Brow
Asa Brown


*REMAINDER OF PAGE INTENTIONALLY BLANK*

## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on the 31st day of August, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as much fully reflected on the Notice of Electronic Filing.

     Robert A. Faucher
     rfaucher@hollandhart.com

     Jonathan K. Youngwood
     jyoungwood@stblaw.com

     Meredith Karp
     meredith.karp@stblaw.com