No. 24-2355
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PAYSERVICES BANK,

*Plaintiff-Appellant*,

v.

FEDERAL RESERVE BANK OF SAN FRANCISCO,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the District of Idaho
No. 1:23-cv-00305-REP
Hon. Raymond E. Patricco, Jr.

**APPELLANT'S SUPPLEMENTAL BRIEF**

Jade A. Craig, Esq.
Jade A. Craig, P.A.
1048 S. Clearview Avenue, #3
Tampa, Florida 33629
Telephone: (813) 459-1309
jade@jadeacraigpa.com

*Attorney for Appellant*
PayServices

**TABLE OF CONTENTS**

INTRODUCTION……………………………………………………………..…….2

LEGAL BACKGROUND……………………………………………………....…3

ARGUMENT…………………………………..…………………………….....…4

    I.    PayServices is still an "eligible depository institution" because it retains the right to present a new application for a bank charter even in Idaho………..….4

    II.    The question in this case remains live because a bank does not have to already have a charter – preliminary or final – to apply for a master account……………6

    III.    The issue of PayServices' entitlement to an account affects PayServices' future applications for a bank charter……………………………………………8

CONCLUSION…………………………………………………………….…10

## INTRODUCTION

On December 19, 2024, the Court issued an order directing supplemental briefing regarding the impact of the Idaho Department of Finance's revocation of PayServices Bank's ("PayServices") preliminary approval for a state bank charter. During oral argument on December 4, 2024, counsel for the Federal Reserve Bank of San Francisco ("FRBSF") mentioned that PayServices' "charter, preliminary or otherwise, had expired and [Idaho] issued a cease and desist order on October 18." *See 24-2355 PayServices Bank v. Federal Reserve Bank of San Francisco*, U.S. Court of Appeals for the Ninth Circuit, https://www.youtube.com/watch?v=-F27-3Oq7Z4 (Dec. 4, 2024), at 22:50. Counsel for FRBSF did not confer or raise the issue with the undersigned counsel for PayServices to obtain information regarding the issue prior to raising it during oral argument. PayServices appreciates the opportunity to clarify the circumstances of the expiration of its preliminary approval.

PayServices' appeal is ongoing. An administrative hearing on the appeal has been set for February 19-20, 2025. Regardless of the outcome in the appeal, PayServices remains an "eligible depository institution" under the Federal Reserve Act because it is a banking corporation organized under the laws of the State of Idaho in good standing. The definition of "depository institution" under the Act does not require the financial institution to hold a charter at the time it applies for a master account. The Court should not abate this case pending the outcome of PayServices's appeal because the issue of whether PayServices is entitled to a master account will remain a live issue. The entity's entitlement to a master

account must be decided because the issue affects PayServices' preliminary approval with Idaho and application for authority to establish a state-chartered bank in another state. The question of whether PayServices can obtain a master account is a factor that a state banking regulator may (and, in some cases, must) consider in evaluating the bank's application.

## Legal Background

The Court's December 19, 2024 order indicates that it is concerned about whether the expiration of the preliminary approval for a bank charter in Idaho and the pending appeal renders the case moot. Order, p. 3. Mootness is one of the doctrines related to justiciability and the decision-making authority of the federal courts. *See* WRIGHT & MILLER, 33 FED. PRAC. & PROC. JUDICIAL REVIEW § 8331 (2d ed.). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotation marks and citation omitted). "The standard for determining that a plaintiff has lost all personal stake in this manner is very high. Mootness demands that it be 'impossible for a court to grant any effectual relief whatever to the prevailing party.'" WRIGHT & MILLER, 33 FED. PRAC. & PROC. JUDICIAL REVIEW § 8347 (2d ed.) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016)); *see Campbell-Ewald*, 577 U.S. at 161 (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the

case is not moot." *Knox*, 567 U.S. at 307–08 (internal citations, quotation marks, and alterations omitted). The facts in this case do not meet this high standard for dismissal.

## ARGUMENT

### I. PayServices is still an "eligible depository institution" because it retains the right to present a new application for a bank charter even in Idaho.

On August 3, 2022, the Idaho Department of Finance ("IDF") granted PayServices "**preliminary approval** of its application to establish a state-chartered bank in Idaho, subject to the [thirteen] conditions" outlined in the letter. Aug. 3, 2022 Letter (emphasis in original). After describing the thirteen conditions, the letter stated that "[o]nce PayServices agrees to and satisfies the above conditions, the Department will conduct a final review to issue final approval and coordinate issuance of a bank charter." PayServices submitted its application for a master account to FRBSF on August 10, 2022. After a nine-month delay in a process that, until recently, only took up to seven business days, *see* SER-042 & 043, FRBSF rejected PayServices Bank's application, citing issues with its business model, which Idaho had already accepted and for which Idaho had provided conditions to ensure PayServices' safety and soundness as an institution. On October 16, 2023, Idaho issued a letter extending PayServices's preliminary charter approval until October 15, 2024 in light of the fact that PayServices was "waiting on the resolution of their complaint against the Federal Reserve Bank of San Francisco prior to moving forward with requesting a final charter from the Department." Idaho noted, however, that it would not issue a further extension beyond that date. Of course, this litigation continued on with the district court's order dismissing the case on March 30, 2024, and this appeal is still pending.

4

On Saturday, October 12, 2024, PayServices submitted documents requesting the final charter approval. On Wednesday, October 16, Idaho issued a letter indicating that "as of [October 16, 2024], PayServices has not met all conditions outlined in the August 3, 2022 letter. **Therefore, the preliminary approval has expired and is now terminated**." Oct. 16, 2024 Letter (emphasis in original). The letter contained no substantive findings for why the October 12, 2024 submission did not meet any of the requirements. It appears that the agency had not reviewed the documents, particularly in light of the one business day that preceded the issuance of the letter.[1] PayServices filed an appeal with the agency, which has been referred to the Idaho Office of Administrative Hearings. Idaho law provides for an informal contested case proceeding in which a hearing officer has been assigned to review PayServices' challenge to the order to cease and desist the use of the word "bank" in Idaho (issued October 18, 2024) and the denial of a final bank charter. *See* Idaho Code §§ 67-5201 & 67-5242; Idaho R. Admin. P. 62.01.01.160. The hearing officer has set the case for hearing on February 19-20, 2025, in Boise, Idaho.

Nonetheless, Idaho has not barred PayServices from submitting a new application for a bank charter. The Oct. 16, 2024 letter states that PayServices may submit a new application and that it "will be subject to regular processing timelines and fees, and any conditions deemed appropriate by the Department at that time." Thus, PayServices remains eligible to submit a new application regardless of the outcome of the pending Idaho appeal.

---

[1] Columbus Day was observed on Monday, October 14, 2024. Idaho recognizes Columbus Day as a state holiday. Idaho State Holidays, https://sos.idaho.gov/state-holidays/ (last visited Jan. 11, 2025).

5

PayServices is not in a materially different position than when it applied to FRBSF for master account. A preliminary approval to establish a bank, which can expired or be revoked, is not a final charter and it does not make a bank any more eligible to apply for an account under the Federal Reserve Act. Additionally, even in the event this appeal is not successful, PayServices may re-apply for a bank charter in Idaho. Given that Idaho has not issued a written finding that would indicate PayServices would not be similarly successful in obtaining a preliminary approval again, since the application lapsed in large part due to FRBSF's delay tactics in the application and litigation process, the parties are likely to be back where they started if this case is dismissed.

> II. **The question in this case remains live because a bank does not have to already have a charter – preliminary or final – to apply for a master account.**

The Federal Reserve Act establish that a bank does not become an "eligible depository institution" by having a bank charter – preliminary or final. This contention misconstrues the way in which the process of applying for a state banking charter works in practice, a process the statute's terms account for.

As used in 12 U.S.C. § 248a, "[t]he term 'depository institution' means (i) any insured bank as defined in section 3 of the Federal Deposit Insurance Act *or any bank which is eligible to make application to become an insured bank under section 5 of such Act* . . . ." 12 U.S.C. § 461(b)(1)(A)(i) (emphasis added). Section 5 of the FDI Act refers to the kinds of institutions that "may become an insured depository institution" "upon application to and examination by the [Federal Deposit Insurance Corporation.]" 12 U.S.C.

6

§ 1815(a)(1). That entity can be "any depository institution which is engaged in the business of receiving deposits other than trust funds[.]" *Id*. There is no dispute that PayServices Bank would be in this business and that it does not hold trust funds.

Depository institutions that are in the process of becoming state-chartered banks are eligible to apply for a master account and receive a determination granting them the account. The Federal Reserve Act defines a "depository institution" to include "any bank which is eligible to make application" for FDIC insurance because it is the type of institution whose business involves "receiving deposits other than trust funds[.]" The entity does not already have to have a charter, preliminary or otherwise, yet. Indeed, in some states, an entity has to obtain FDIC insurance *before* it can operate.[2] *See, e.g.*, Fla. Stat. § 658.38 ("A state bank must, *prior to opening*, obtain and thereafter maintain insurance of its deposits by the Federal Deposit Insurance Corporation.") (emphasis added). Even in those cases, however, the bank still does not have to have the FDIC insurance before it can obtain the charter, which occurs "prior to opening."

In this case, the record indicates that at least four months before PayServices obtained the preliminary approval for a bank charter, PayServices communicated with officials at FRBSF as early as April 2022, to discuss the process of applying for a master account. *See* Compl., ER-52 & 53, §§ 16-20. The preliminary approval from Idaho was not

---

[2] PayServices filed an application in Idaho because its business model of holding 100% of deposits in reserve – a safer form of banking that is, unfortunately, unique among traditional U.S. banks (*see* ER-053; SER-041 & 042) – did not warrant obtaining FDIC insurance, and Idaho does not require it for all commercial banks.

necessary for PayServices Bank to submit the application or receive a master account because it needed the master account *before* it could receive deposits, which requires access to the U.S. payment system to make payments to other banks. PayServices Bank is a banking corporation, registered in good standing with the Idaho Secretary of State. It meets the definition of an entity that qualifies as a bank. Holding a charter and opening the bank to receive deposits are all steps that take place *after* the master account application process.

### III.    The issue of PayServices' entitlement to an account affects PayServices' future applications for a bank charter.

On November 23, 2024, PayServices submitted an application to establish a state-chartered bank in California to the California Department of Financial Protection and Innovation. California regulators consider the issue of whether charter applicants are able to operate a bank on their own, without requiring the use of an intermediary bank. California law requires regulators to consider the terms of a charter applicant's business plan. "The commissioner may give or withhold his or her approval of the application in his or her discretion, but he or she shall not approve the application until he or she has ascertained to his or her satisfaction . . . . [t]hat the proposed bank or trust company will have a reasonable promise of successful operation." Cal. Fin. Code § 1023(b).

FRBSF has suggested below and in this Court that FRBSF's obligation to make Federal Reserve services available to nonmember depository institutions (12 U.S.C. § 248a(b)) could be met through PayServices relying on a correspondent bank account from a bank that already holds a master account. It is well known that correspondent banking relationships "present several challenges" and fewer banks enter into them because of the

8

compliance issues they raise. *See Overview of Correspondent Banking and "De-Risking" Issues*, Cong. Research Serv., at 1-2 (updated Apr. 8, 2022), https://crsreports.congress.gov/product/pdf/IF/IF10873/3. A correspondent bank would present credit risks to PayServices' operations as it would become more difficult to settle transactions if they are running through two banks. PayServices would not have complete control over the policies and procedures of that bank with respect to how PayServices' customer funds would be treated. For example, a customer's deposit could vanish and PayServices would have no control over it because the process of investigating the movement of the deposit would be controlled by this intermediary bank. 100% reserve banking could not be maintained with a correspondent bank account, but that is currently a condition of the preliminary Idaho charter approval and potentially a condition of a California charter. As Judge Bumatay observed at oral argument, PayServices could not act as a bank in its own right if it had to rely on an intermediary bank with a master account. That limitation presents the kind of risk to PayServices' chance of successful operation that would hinder its charter application in California and other states that consider this factor.[3]

---

[3] Several states within FRBSF's jurisdiction consider a similar factor involving likelihood of success. *See* Federal Reserve Banks, Fed. Res. Bank of S.F., https://www.federalreserve.gov/aboutthefed/federal-reserve-system-san-francisco.htm (last visited Jan. 11, 2025) (displaying map of states within FRBSF's jurisdiction); *see also, e.g.*, Alaska Stat. § 06.15.030 (considering whether "there is reasonable expectation of its financial success" in granting charters to mutual banks); Or. Rev. Stat. § 707.070(9) & (10) (applications "shall include" "[e]vidence satisfactory to the director, in the form of a business plan and such additional information as the director may require, demonstrating that the proposed banking institution is likely to be financially successful" and "[t]he proposed operating policies of the banking institution").

The pending application in California and the authority to re-file an application in Idaho both demonstrate that the question of whether PayServices is entitled to a master account remains live. It remains eligible because it is a bank within the definition set out in the Federal Reserve Act, whether it has a preliminary or a final approval for a charter. Neither of these items is an element of eligibility under the statute. FRBSF's denial of PayServices's application for a master account ran down the clock on its Idaho application. FRBSF's refusal to grant an account threatens to hold up the process of obtaining a charter in another state. Leaving this question open also threatens to lead to denial of this pending California application and threatens the success of future applications. *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 126 (1974) (declining to dismiss case as moot because, even though strike upon which action was based had ended, the temporary end of the conflict "should not preclude challenge to state policies that have had their impact and that continue in force, unabated and unreviewed" because a court decision could substantially affect future labor-management negotiations). The use of intermediary bank would improperly require PayServices to absorb a level of credit and operational risk that other banks with master accounts do not have to absorb.

## CONCLUSION

PayServices respectfully requests that this Court issue an opinion in this case on the questions presented without delay and decline to dismiss the case as moot in light of the expiration of the preliminary approval for a bank charter in Idaho.

Date:  January 17, 2025

Jade A. Craig, P.A.

*s/ Jade A. Craig*_____
Jade A. Craig

*Attorney for Appellant PayServices Bank*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 17th day of January, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system, and caused a copy of the foregoing to be electronically served on all parties registered with the system to receive service in this action, including the following:

Jonathan K. Youngwood
Meredith Karp
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(202) 455-2000
jyounwood@stblaw.com
meredith.karp@stblaw.com
managingclerk@stblaw.com

*Counsel for Defendant-Appellee*

Jade A. Craig, P.A.

*s/ Jade A. Craig*_____
Jade A. Craig

*Attorney for Appellant PayServices Bank*